HUMPHREY *v.* EDDY TRANSPORTATION CO.

BROKERS—RIGHT TO COMMISSION—DOUBLE DEALING.

An agent for the sale of property loses his right to commission from his principal where he does not disclose the fact that a corporation in which he is interested as stockholder and director is the real purchaser, and that the nominal purchaser, who has a valuable contract with the seller dependent upon the making of the sale, is furnishing a large bonus towards the purchase.

Error to Wayne; Lillibridge, J. Submitted October 24, 1895. Decided November 26, 1895.

*Assumpsit* by Moses W. Humphrey against the Eddy Transportation Company for a commission on the sale of boats. From a judgment for plaintiff, defendant brings error. Reversed.

The facts in this case are substantially conceded, and are well and accurately stated in the appellant's brief as follows:

"This is an action brought to recover a commission claimed on the sale of boats. The vessels were the John F. Eddy and the John Shaw, and were sold by the defendant company to the Detroit Dry-Dock Company on February 27, 1892, for the consideration of $118,750. On the same day the Detroit Dry-Dock Company sold the vessels to the Sulphite Fibre Company for the sum of $116,250. Prior to this sale, and during that winter, the defendant company had been offering these vessels for sale in all of the principal lake ports. The defendant company had made an agreement with the Detroit Dry-Dock Company for the building of a steel boat, provided the defendant should first sell the above-mentioned vessels. At some time, not definitely fixed, but a considerable time prior to the above-mentioned sale, Capt. John Shaw, manager for the defendant, was at the office of the Dry-Dock Company, endeavoring to sell these vessels, and while there met the plaintiff, who was informed of Capt. Shaw's mission at that place. The plaintiff claims that at that time he was promised $1,000 if he could find a purchaser to pay $125,000, and that that price would be shaded. Capt. Shaw says: 'I told him if he sold the boats for $125,000 I would give him $1,000, and he asked me if that was the lowest price I would take for them, and I told him that $120,000 was the lowest figure that we should put on the boats. I did not make any arrangement with Humphrey whereby he was to receive a commission on a sale for less than $120,000. $120,000 was the lowest price.' Prior to the negotiations leading to the sale that was subsequently made, the plaintiff admits that the defendant had informed him that the vessels were held at $120,000, and he says, 'When the telegram

was sent (February 25, 1892), they had fixed that price,—
$120,000.' This telegram is as follows:

" ' EDDY BROS.,
    " ' Bay City:
    " ' Lindsay & Co. still willing to take boats at one hundred and fifteen, but will not pay more. Can't you reduce your figures twenty-five hundred?

[ Signed ]    " ' A. McVITTIE.'

"During that winter the plaintiff was at all times the general manager for, and also a director and stockholder in and secretary of, the Sulphite Fibre Transportation Company (sometimes spoken of as the Lindsay Company), and he at once entered into negotiations with a view to purchasing these boats for his own company. Capt. Humphrey, plaintiff, and Alexander McVittie, the manager for the Dry-Dock Company, held numerous conversations in regard to bringing about a sale of these boats. Capt. Humphrey was desirous of purchasing them if he could get the price low enough, and the Dry-Dock Company was interested in having the defendant sell the boats, because that insured the Dry-Dock Company's selling an iron boat to the defendant. Early in the negotiations Mr. McVittie offered to put in $2,500 or $5,000 as a bonus to help bring about a sale of the defendant's boats, communicating this fact to Capt. Humphrey, the agent for the defendant. For a long period of time, and during all the subsequent negotiations, the plaintiff was in possession of this offer of a bonus made by the Dry-Dock Company, and never communicated it to the defendant, and the defendant never had any notice or knowledge until after the sale of the boats that the Dry-Dock Company was willing to or did put in or contribute any bonus to bring about a sale of the boats.

"The plaintiff, under authority from his own company, went to Bay City, and made the defendant an offer of $110,000, which offer was refused. Thereafter the plaintiff says: 'In the board of directors (Sulphite Fibre Company) the price to be paid for these boats was discussed, and I said the boats were cheap enough at the price they asked for them, which was, I think, at that time, about $120,000. The directors authorized me to offer for these boats, finally, $115,000. I made known that fact to Capt. Shaw, or the president of the Eddy Company, before the final telegram of February 25th was sent.' Thereafter,

all negotiations between the defendant company and the plaintiff and his company were declared off. On February 25, 1892, Capt. Humphrey dictated a telegram to Eddy Bros., at Bay City, which was signed and sent by Alex. McVittie, and is above given, the object of which was to induce the defendant to reduce its price on the boats. Thereafter this message led to the negotiations which resulted in the defendant's selling the boats to the Dry-Dock Company for $118,750, making a reduction of $1,250, and the Dry-Dock Company at once transferred the boats to the plaintiff's company for $116,250, giving to the plaintiff and his associates the benefit of $3,750 from the defendant's price. Thereafter the defendant, upon learning of the plaintiff's connection with the sale, denied liability for the claimed commission of $1,000."

*John C. Shaw* and *J. H. Goff*, for appellant.

*De Forest Paine*, for appellee.

GRANT, J. *(after stating the facts)*. The plaintiff was the general manager, a director and stockholder in, and secretary of the Sulphite Transportation Company, which was the actual purchaser of these boats. The Detroit Dry-Dock Company was only the nominal purchaser, the mere conduit through which the purchase was made by, and the title passed to, the Sulphite Company. Plaintiff testified that he informed his (the Sulphite) company that the boats were cheap at $120,000, and that early in the negotiations the Detroit Dry-Dock Company offered the Sulphite Company, through plaintiff, a bonus of $5,000 towards the purchase, which was subsequently reduced to $2,500. None of these facts were communicated by the plaintiff to the defendant. Plaintiff wrote or dictated the telegraphic dispatch above referred to, and induced Mr. McVittie, the agent for the Dry-Dock Company, to sign it, because "I thought it would have more weight, coming from McVittie." Plaintiff, as agent for defendant, for whom he was bound by law to obtain the best price possible, was in reality purchasing for himself. He therefore had a personal interest hostile to

the interest of his principal. The law required him to disclose fully to his principal the actual situation, his own interests, and the circumstances of the deal between the Sulphite Company and the Dry-Dock Company, but he gave no testimony to show that he did so. The *onus probandi* was upon him. *Fountain Coal Co.* v. *Phelps*, 95 Ind. 271; 1 Am. & Eng. Enc. Law, 377, note 1, and authorities there cited. This is one of those contracts which are "opposed to open, upright, and fair dealing, and therefore opposed to public policy." It is immaterial that the plaintiff acted in good faith, or that the defendant suffered no damage. It is the policy of the law to remove all temptation in an agent to be influenced by his own interest to the detriment of his principal. While there is some conflict in the authorities as to the right of recovery where a plaintiff has acted as agent of both seller and purchaser, with full knowledge that he is so doing, the authorities are uniform in holding that he cannot recover where he withholds knowledge of such relation. 1 Am. & Eng. Enc. Law, 372, 375; *Scribner* v. *Collar*, 40 Mich. 375; *People* v. *Township Board of Overyssel*, 11 Mich. 222; *Dwight* v. *Blackmar*, 2 Mich. 330; *Rice* v. *Wood*, 113 Mass. 133; *Wadsworth* v. *Adams*, 138 U. S. 380; *Brock* v. *Barnes*, 40 Barb. 532, 533. The court should have directed a verdict for the defendant.

Judgment reversed, and a new trial ordered.

The other Justices concurred.