## LEMON v. LITTLE.

Whether parties have manifested an intention to create a novation is a question of fact for the jury.

Whether an employee, an employer, and a third person entered into a contract of novation, whereby the employee released the employer from liability under the contract of employment and accepted the third person in place thereof, **held**, under the evidence, for the jury, in view of Rev. Civ. Code, § 1218, providing that a voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, etc.

Defendant and codefendant desired to secure mining claims and organize mining companies. They employed plaintiff to locate claims at a monthly salary for a specified period. Plaintiff took options on claims in the name of defendant. **Held**, in an action by plaintiff for compensation, that it was competent for defendant to show

that he and the codefendant were equally interested in the options, and that plaintiff was, while securing contracts, the agent of both subjecting him to the rule that an agent while acting for his principal cannot make any contract to further his own interest.

An agent who acts without the knowledge of his principal for both parties to the transaction cannot recover compensation from the principal, whether the principal was injured or not, or whether the agent intended any wrong or not.

One employed to secure for his employer options on mining claims cannot receive compensation from the parties executing the options without losing his right to compensation from the employer ignorant of the facts.

Facts showing that plaintiff never had any cause of action may be shown on his cross-examination.

In an action by an employee for compensation for services rendered in securing for his employer option contracts on mining claims, the employer may show on the cross-examination of the employee that he accepted commissions from the parties executing option contracts, though such conduct is pleaded as a defense.

(Opinion filed, February 5, 1908.)

Appeal from Circuit Court, Lawrence County. Hon. W. G. Rice, Judge.

Action by Henry D. Lemon against Frank E. Little and another. From a judgment for plaintiff, defendant Frank E. Little appeals. Reversed, and new trial granted.

*Martin & Mason,* for appellant.

An agent who accepts an adverse employment without the knowledge of his principle cannot recover any compensation from either party. Enc. Law, 1102; Wadsworth v. Adams, 11 Sup. Ct. Rep. 305; Collins v. McClurg, 29 Pac. 299-302; Mullen v. Bower, 53 N. E. 792-3; Humphrey v. Eddy Co., 65 N. W. 13; Sumner v. Reicheniker, 9 Kans. 320; Jansen v. Williams, 20 L. R. A.; Sea v. Carpenter, 16 Ohio St. 412. Defendants should have been allowed to show on plaintiff's cross-examination that plaintiff had failed to comply with the terms of his employment by engaging his services to the vendors to sell their property to his principal and seeking from them a commission for so doing. Novotny v. Danforth, 9 S. D. 303-4; Cranmer v. Building Assn., 6 S. D. 341; Wendt v. Ct. St. P. & O. Co., 4 S. D. 483; 3 Wigmore Evidence, Sec. 1888-9. The court erred in refusing to allow defendant to show in mitigation of damages that plaintiff had, or might have had, other employment. Note 53 L. R. A. 108.

*Samuel C. Polley,* for respondent.

In the contract sued upon the obligation to pay plaintiff is imposed upon both defendants, and plaintiff's obligation is to devote his entire and undivided services for the absolute benefit of both defendants; not one portion of his services to one defendant and another portion to the other, but his entire service to both. They were engaged in a joint enterprise, their interests were joint and therefore the contract was a joint contract. Dumanoise v. Townsend et al., 45 N. W. 179; Asborn v. Martha's Vineyard R. R. Co., 5 N. E. 486; Alpaugh v. Wood, 23 Alt. 261-3, Matters about which a witness has not been interrogated on his direct examination cannot be brought out on cross examination. State v. Bunker, 7 S. D. 639, 65 N. W. 33. Evidence of an affirmative defense is not admissible upon cross examination. Backes v. Erickson, 19 S. D. 245, 103 N. W. 21. Novation is a contract. Among the essential and vital requisites of a contract, of that character at least, three parties must concur in its execution. Barnard L. M. Co. v. Galloway, 5 S. D. 205, 58 N. W. 565-7; Grissel v. Bank, 12 S. D. 83, 80 N. W. 161

CORSON, J. This action was instituted by the plaintiff to recover a balance claimed to be due him on a contract entered into between him and the defendant. From a directed verdict in favor of the plaintiff the defendant Little has appealed, he being the only person served or appearing in the action. The material part of the contract made the basis of the action and set out in the first paragraph of the complaint is as follows: "That for and in consideration of the sum of two hundred ($200.00) dollars per month, paid in cash on the 10th day of each month to the party of the second part by the parties of the first part for a term of twenty-four (24) months begnining with the 1st day of April, 1903, the said second party hereby binds himself to devote his entire and undivided services for the absolute benefit of the said first party for the said term of months as above written. The nature of the said services to be performed by said second party is at all times to be determined by the said first parties; said services to be performed to be confined to the United States." Plaintiff alleges in his complaint that pursuant to the terms of said contract he performed work and services as a mining superintendent for the

defendants, and performed all the services of every kind and character required of him by the terms of said contract, under the direction of the defendants, for the term of 14 months, that he had been paid by the defendants therefor the sum of $1,014.90, and that th defendants are justly indebted to him in the sum of $1,785.10. with interest thereon from the 1st day of June, 1904. The defendant Little's answer was in substance as follows: That in the month of May, 1903, the contract and agreement stated in the plaintiff's complaint was with the consent of the plaintiff assumed by the Minneapolis Consolidated Mines Company; that said company, with the plaintiff's consent, assumed all the obligations thereof resting upon the defendant and his codefendant, Westby, with the intent to release the defendant and his codefendant, and the plaintiff accepted said company as his debtor in place of the defendant and his codefendant with intent to release them. The defendant denies the allegations of the second paragraph of the complaint, and alleges that all work and services perfomed by the plaintiff during the times specified in the complaint were performed by him for the Minneapolis Consolidated Mines Company and at its request. He further denies the allegations of the third paragraph of the complaint, which alleges that he had been paid the sum of $1,014.90 by the defendants, and alleges upon information and belief that said payments were made to the plaintiff by said company upon the account of said company, and denies that there is due plaintiff from the defendants the amount of $1,785.10, or any other sum. The defendant for a further defense alleges upon information and belief that, while the plaintiff was engaged in the labor and services in behalf of said mining company for which labor and services this action is brought, a part of plaintiff's duty was the securing of options to purchase certain mining properties for the benefit of said mining company, which options were taken in the name of the defendant Little by the said plaintiff, and thereupon transferred to the said mining company, all with the knowlegde of the plaintiff; that while so engaged the plaintiff without the knowledge of said mining company, and without the knowledge of the said defendant or his codefendant, and without their consent or the consent of either of them, took to himself from the

parties giving· said option contracts an agreement to pay to the plaintiff a commission on such option sales of 10 per cent. more or less on the purchase price called for by said options, the total amount of said commissions so agreed upon between the· plaintiff and the parties giving said option amounting to about $15,000. The appellant contends that the court erred in sustaining certain objections to defendant's evidence, in striking out all of defendant's evidence as to his pleas of novation, in excluding evidence as to the receipt of commissions, in excluding defendant's evidence of defendant Westby's interest in certain option contracts taken by the plaintiff and commission contracts, and in directing the jury to return a verdict in favor of the plaintiff. In support of the court's ruling, counsel for plaintiff insists that the evidence as to the option contracts taken by the plaintiff in the name of the defendant Little, and the commission contracts for the commissions payable to himself, was immaterial and irrelevant in this action, for the reason that this action was against the defendants upon a joint contract, and that it was only such matters as pertained to the defense of the defendants jointly that was admissible; that the contract sued upon imposed upon both defendants and the plaintiff an obligation on the part of the plaintiff to devote his entire time and undivided services to the absolute benefit of both defendants and not to the services of any one defendant individually; that the contract between plaintiff and defendant being a joint contract plaintiff was under no obligation and owed no duty by reason thereof to either of the defendants in any individual venture. The trial court seems to have adopted the views of plaintiff's counsel, and held that the defendant failed to offer any legal evidence tending to prove that there was a novation, and that the alleged receipt of commissions and commission contracts entered into by the plaintiff in connection with the option contracts taken in the name of Little constituted no defense to this action as against defendant; and it, therefore, struck out all of defendant's evidence, and directed a verdict in favor of the plaintiff

As showing the circumstances attending his employment, the plaintiff upon cross-examination testified that the defendants Little

and Westby came to the Black Hills for the purpose of looking up some mining property for development and exploration, and were looking for some man to take charge of their operations in finding the property and developing it after it was found. "That was the occasion of their employing me, as I understood it. I told them what experience I had had in mining. Then we came to Lead City, and Mr. Little took an option on the Slavonian group. He went back East, and as soon as the snow permitted I made an examination of this group for him, reporting adversely upon it, and advised Mr. Little not to go any further with the operations, or spend any money in developing the property. I made that a verbal report to him when he came out here on May 14th or 15th. Before Mr. Little came here I had already talked with Berthelson with reference to getting an option on his ground. I asked him if he would bond his ground. When Mr. Little got here I had the option agreement for the Berthelson ground already typewritten. That was done without Mr. Little having any knowledge of it until he came here a few days later. When he came I recommended that he take an option on the Berthelson ground in lieu of the option upon the Slavonian ground." It also appears from the evidence offered by the defendant and stricken out by the court that soon after the contract with the plaintiff was entered into the defendants transferred the said contract to one of the companies organized by them, namely, the Minneapolis Consolidated Mines Company; that plaintiff acted as superintendent of this company, and was paid by it his salary for several months; that the plaintiff procured certain option contracts upon mining claims in the Black Hills in the name of the defendant Little, and that in taking these option contracts he also took commission contracts from parties executing the option contracts to himself for commissions to be paid him in case the sales of the properties were effected under the option contracts, and also received certain moneys from these parties as commissions on such sales; that he was superintendent; that he bought all supplies and opened a bank account in the company's name; that he signed all checks and vouchers as Henry D. Lemon, superintendent; that he engaged men and commenced work and sunk a shaft on the ground

bonded. It was further shown by the testimony of Henry M. Little, the secretary and treasurer of the company, that since its organization Mr. Lemon acted as general superintendent of that company; that he received checks signed by the company on his own account, paid the disbursements to others, acknowledged receipt thereof as Henry D. Lemon, superintendent; and that he took active steps toward floating the company's stock, prepared prospectus, printed letter heads on which his name appeared as superintendent of the company. It also appeared from the evidence offered and stricken out that Mr. Little informed the plaintiff of the transfer of the contract to the mining company, to which the plaintiff made no objection about the time the same was transferred. Defendant also offered statements made out by H. D. Lemon, of the company, charging himself with salary for April and May, 1903, together with a large number of items aggregating over $10,000. Mr. Henry M. Little also testified that the company, acting by its directors as to the employment by F. E. Little and Archie B. Westby of Henry D. Lemon, assumed all agreements made by those parties, that the assumption of defendant's agreement was by action of the board as such, and that there were no written minutes of that meeting. The evidence tended to prove that the defendants assigned their contract with Lemon to the mining company, which assumed the obligation thereof; that plaintiff was notified of this assignment, made no objection thereto, and entered upon the discharge of his duty as superintendent; that he received salary of such company as superintendent for a number of months, took charge of its affairs, received and disbursed moneys on its account to the extent of over $10,000, all of which transactions occurred during the period for which he is now claiming pay from these defendants.

It is contended by the appellant that there was in fact a substitution of a new debtor in place of the old one, and that the only element of a novation as to which there was no positive or direct evidence was at to whether this submission was with intent to release the defendants and that whether or not such intent existed was a question of fact for the jury, to be gathered from the circumstances and conduct of the party, and was not a question

for the court. The author of the subject of "Novation," in 21 Enc. of Law Am. Eng. of Law, 670, says: "The question whether the parties have manifested their intention to novate in a given case is one of fact, and is therefore to be determined by the jury. * * * It has been said, moreover, that, where a creditor of the old firm continues to deal with the new in the  same general way, slight evidence is sufficient to show that he has accepted the new as his debtor instead of the old. This assent to the new debtor may be expressed in any way permissible in the information of any other contract." By section 1218 of the Revised Civil Code it is provided: "A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it so far as the facts are known, or ought to be known to the person accepting." We are of the opinion that there was sufficient evidence tending to prove a novation to be submitted to a jury, and that the court erred in not submitting this question to it. But, assuming that the evidence of novation was not sufficient to authorize a jury to find that such a novation had taken place, we are clearly of the opinion that the court erred in excluding the defendant's evidence as to the alleged commission contracts entered into by the plaintiff with parties from whom he took option contracts in the name of the defendant Little, and that he did in fact receive certain amounts from those parties as such commissions, and in excluding defendant's evidence tending to prove that the option contracts, though taken in the individual name of Little, were in fact taken for the benefit of Little and Westby, and were taken by the plaintiff in pursuance of his contract with them.

As we have seen, it appears from the evidence that defendants Little and Westby went to the Hills country to secure mining claims for the purpose of organizing mining companies, that the plaintiff was employed by them to assist them by reason of his mining experience in securing mining claims for the purpose of organizing such companies, that options were taken upon mining claims by Lemon in the name of Little instead of the joint names of Little and Westby; and that the defendant offered to show by his evidence that he and Westby were equally interested in the stock of these companies. It was competent, therefore, for the de-

fendant Little to show that ,while the option contracts for these mining claims were taken in his individual name, they were in fact for the benefit of himself anl his co-defendant Westby. Assuming this evidence to be true, Lemon in securing the option contracts was in fact acting as the agent of both Little and Westby, and must be held subject to the rule that an agent while acting in the business of his employer cannot make any contract to further his own interest while acting as such agent with the party with whom he is dealing. Mr. Mechem, in his work on Agency (section 643), states the rule applicable to this subject as follows: "As has been seen, the law will not permit the agent to put himself in such a situation that his own interests will conflict with those of the principal. The latter is entitled to the disinterested skill and diligence of the agent for his own exclusive benefit, and unless the principal expressly consents to it the agent cannot divide this duty and give a part to another. * * * If, therefore, without such consent, the agent undertakes to also serve the other party in the same transaction, he commits such a breach of his duty to his own principal, and so violates the rules of sound policy and morality, that he forfeits all right to compensation for the principal who first employed him. And for the same reason he cannot recover compensation from the second employer, who was ignorant of the first engagement." In 1 Am. & Eng. Enc. of Law, p. 1102, the learned author on the subject of "Agency" says: "Thus, where it appears that an agent, without the principal's knowledge, makes use of his agency to acquire or promote interests which are directly inimical to those of his principal, he will not be allowed to recover compensation for his services." The same author, on page 113 says: "It is well settled that, where an agent has acted for both parties to a transaction, he cannot recover compensation from one of them to whom the double agency was unknown. The decisions go even farther, and hold that the agent cannot claim remuneration from either party, unless it is clearly shown that both parties knew and assented to the double employment." Sea v. Carpenter, 16 Ohio, 412; Sumner v. Reicheniker, 9 Kan. 320; Mullen v. Bower, 22 Ind. App. 294, 53 N. E. 792-793; Wadsworth v. Adams, 138 U. S. 380, 11 Sup. Ct. Rep. 305; Collins v. Mc-

Clurg, 1 Colo. App 348, 29 Pac. 299-302; Humphrey v. Eddy Co., 107 Mich. 163, 65 N. W. 13, note 45 L. R. A. 41-48. In Jansen v. Williams, 36 Neb. 869, 55 N. W. 279, 20 L. R. A. 209, the Supreme Court of Nebraska says: "It makes no difference that such common agent was guilty of no actual wrong, as the court refuses to countenance such an employment, not for the sake of the principle, but for the sake of the law. It is immaterial whether the principal was in fact injured or not, or whether the agent intended no wrong." Mullen v. Bowler, 22 Ind. App. 294, 53 N. E. 792. In Humphrey v. Eddy Co., 107 Mich. 163, 65 N. W. 13, the Supreme Court of Michigan says: "It is immaterial that the plaintiff acted in good faith, or that the defendant suffered no damage. It is the policy of the law to remove all temptation in an agent to be influenced by his own interest to the detriment of his principal."

It is quite clear that the plaintiff, by reason of the commission contracts made payable to himself, could not give to the defendants the benefit of his unbiased judgment as to the value of the mining properties on which he was taking options; and it is not surprising, in view of these commission contracts taken by him, that the plaintiff in his letters to defendant Little spoke in the highest terms of the mining properties included in the option contracts, and sought to impress upon the said defendant the great value of these mining claims. The situation of the plaintiff was one which an agent could not safely assume while acting as such agent, and it would be a reproach upon both law and justice to permit a person under those circumstances to recover for services claimed to have been rendered under the evidence offered and excluded in this case. The court was clearly in error, therefore, in excluding defendant's evidence tending to prove that the option contracts though made in Little's individual name, were for the benefit of himself and his codefendant Westby, and in excluding defendant's evidence offered tending to prove that the plaintiff had received commissions and commission contracts from the parties executing the option contracts in the name of defendant Little. It is quite apparent from the rulings of the learned circuit court in this case that it adopted too technical a rule in the

admission of evidence, and in the view it took of the case generally in refusing to permit the defendant to show the real nature of the option contracts for whose benefit they were taken, and in excluding evidence tending to prove that the plaintiff in connection with these option contracts contracted for a commission on the part of the sellers of property to be paid by them to himself. If the option contracts were in fact taken for the benefit of Little and Westby, then it was competent to show on the cross-examination of plaintiff, Lemon, that he did take these commission agreements from the parties executing the option contracts, and did in fact receive money as commissions from these parties, as the receipt of such contracts and commissions would show that the plaintiff had no cause of action. All questions propounded to plaintiff, Lemon, while on the stand in regard to these commission contracts, were excluded on the ground that they were irrelevant, immaterial, and did not constitute proper cross-examination. Two of the questions will serve to illustrate this point: "Q. I will ask you to state, Mr. Lemon, whether or not you actually received any commission from La Beau upon that contract out of moneys paid to La Beau by Mr. Little? Q. I will ask you to state whether or not you did not have a side agreement between yourself and the owners of the Berthelson ground that you were to receive 10 per cent. commission upon all money that might be paid over by Mr. Little or others upon this Berthelson option?" These questions were, as before stated, objected to, and the objection sustained upon the assumption that the option contracts though made in the name of Little were not made for the benefit of himself and his codefendant Westby. The questions were neither irrelevant nor immaterial, nor did they come within the rule excluding testimony as to an affirmative defense on cross-examination. In the case of Novotny v. Danforth, 9 S. D. 301, 68 N. W. 749, this court held that it was proper on cross-examination to interrogate the plaintiff as to matters which tended to prove that he had no cause of action, as such evidence tends to disprove the plaintiff's case. In other words, facts tending to show that the plaintiff never had any cause of action may be shown on his cross-examination.

If, as contended by the defendant in the case at bar, the plain-

tiff was taking the option contracts for Little and Westby under his agreement with them, then the evidence sought to be elicited upon the cross-examination would tend to disprove his cause of action and show that he had no right to recover upon same, and the fact that the defendant had from an abundance of caution set up these commission contracts as a defense to the action would not deprive him of the right to show that the plaintiff had in fact no cause of action against him. Numerous errors are assigned by the appellant as to the exclusion of evidence offered on the part of the defendant; but, in the view we have taken of the case, it will not be necessary to discuss each of these assignments of error separately.

The judgment of the circuit court and order denying a new trial are reversed, and new trial is granted.