Merle BUSHMAN, James Ritter, and
Myron Kockelman, Plaintiffs
and Appellees,

v.

PURE PLANT FOOD INTERNATIONAL, LTD., Defendant and Appellant.

No. 13644.

Supreme Court of South Dakota.

Argued Oct. 13, 1982.

Decided March 2, 1983.

John E. Burke, Sioux Falls, for plaintiffs and appellees; John N. Gridley III, Sioux Falls, on brief.

Charles L. Dorothy of Dorothy & Palmer, Sioux Falls, for defendant and appellant.

HENDERSON, Justice.

## ACTION

Appellees, by their complaint, sought to recover: 1) unpaid bonuses allegedly owed them by appellant; and 2) double damages under SDCL 60–11–7 for the fraudulent, oppressive, or malicious withholding of bonuses. Appellant counterclaimed averring salary and expenses were owed because appellees served a competitor's interest. Appellees filed an amended complaint including a cause of action for appellee Ritter's medical expenses incurred after appellant allowed his insurance to lapse.

A jury trial ensued resulting in verdicts of: $3,268.56 as double damages for appellee Bushman; $8,498.00 as double damages for appellee Kockelman; $3,438.12 as double damages and $924.10 as medical expenses for appellee Ritter; and $50.00 damages against appellees Bushman and Ritter on appellant's counterclaim. Appellee Kockelman was found not to have violated his duty of loyalty and thus no damages were assessed against him. On appellant's motion, a judgment n.o.v. was entered which reduced the bonus verdicts by one-half. We affirm.

## FACTS

Appellee Kockelman was hired by appellant in 1971. His salary and expenses were revised annually. During 1974–75, he began to receive bonuses based on a percentage of his gross sales. In 1976, he acknowledged in writing that bonuses were at appellant's discretion. No other mention of the discretionary nature of bonuses was made to appellee Kockelman, although some of his employment terms were altered each year after 1976.

Appellee Kockelman discontinued his employment with appellant on September 6, 1980. Although he was paid part of his bonus, he claimed $4,249.04 remained due. Appellant mailed him a letter stating that once appellee Kockelman returned appellant's equipment and product that any amounts owed him would be paid. Although returned, his bonus was not paid. Appellee Kockelman testified that appellant's bookkeeper told him that his bonus would be paid when the books were closed at year-end. He has never collected his bonus.

Appellee Bushman became employed by appellant in 1975. Likewise, his salary and expenses changed annually. He also acknowledged in writing during 1976 that bonuses were discretionary with the appellant. As with appellee Kockelman, no other mention was made of the discretionary nature of bonuses to appellee Bushman although some employment terms changed. On September 11, 1980, appellee left the employ of appellant, and he claimed $1,634.28 was due him in unpaid bonuses. He has not received his bonus.

Appellee Ritter started working for appellant in 1972. His salary and expenses also varied annually. He signed the 1976 discretionary bonus letter, and once again, no other mention was made of the discretionary nature of bonuses. On September 1, 1980, appellant discontinued appellee Ritter's employee family health insurance coverage but did not inform him at that time. On September 5, 1980, while appellee Ritter was still in appellant's employ, his daughter suffered a broken arm which resulted in medical expenses of $924.10. Appellant sent appellee Ritter a letter on September 8, 1980, informing him that he should convert his medical coverage to his own account within thirty days to maintain continued coverage. He did not convert the coverage. Appellee Ritter resigned from appellant's employ on September 15, 1980. He also claims that he is owed $1,719.06 in bonuses.

For each appellee, bonuses disbursed by appellant were 2% of paid orders. On January 4, 1979, a letter was sent to appellees from appellant setting forth a table of sala-

ries and bonuses based on sales volume. This letter said nothing about bonuses being discretionary. On August 31, 1980, appellant produced bonus-accounting statements on each appellee which listed, as balances due, amounts that corresponded to the amounts appellees claimed were due.

It is undisputed that all three of the appellees were involved in the formation of a new company styled as Farmers Plant Food, Inc. The level of appellees' activity in the new venture while they were employed by appellant is disputed. What can be said is that on July 30, 1980, appellees Bushman and Ritter met and discussed the possibility of a new company being formed. On August 11, 1980, all of the appellees convened in Canby, Minnesota, to discuss the formation of the new business. It is undisputed that some expenses, such as travel to the meeting, were charged to appellant. It is also clear that each appellee, as he wound down his business with appellant, discussed his termination and opportunities in the new company with appellant's employees and customers. However, there is conflicting evidence as to the amount and quality of the contacts.

## ISSUES

### I.

DOES A VIOLATION OF AN EMPLOYEE'S DUTY OF LOYALTY AS REQUIRED BY SDCL 60–2–13 BAR AN EMPLOYEE FROM COLLECTING COMPENSATION DUE HIM? WE HOLD THAT IT DOES NOT.

### II.

WERE THE BONUSES HEREIN PAYABLE AT APPELLANT'S DISCRETION? WE HOLD THAT THEY WERE NOT.

### III.

WHEN AN EMPLOYER TERMINATES AN EMPLOYEE'S MEDICAL COVERAGE AND PRIOR TO NOTIFYING THE EMPLOYEE, A MEMBER OF THE EMPLOYEE'S FAMILY IS INJURED, IS THE EMPLOYER LIABLE FOR THE MEDICAL EXPENSES? WE HOLD THAT IT IS.

## DECISION

### I.

Appellant and appellees operated under an oral employment relationship without an agreement as to duration [1] or a noncompetition clause. Evidence was introduced that appellees did work on soliciting interest in their new venture while employed by appellant. The jury found that appellees Bushman and Ritter violated their duty of loyalty. Appellant urges this Court to deny appellees' claims to bonus compensation on the basis of SDCL 60–2–13 and case law.

SDCL 60–2–13 provides: "An employee who has any business to transact on his own account, similar to that entrusted to him by his employer, must always give the latter the preference."

Although SDCL 60–2–13 does not flatly prohibit employees from pursuing their own interests, it does require an employee to prioritize. An employee must prefer his employer's business interests to his own. Appellees testified below that they worked diligently to bring all their accounts in order for appellant. The settled record is replete with affirmations by appellees that they did keep their business interests subordinated to appellant's while they remained on appellant's payroll. Appellant takes issue with appellees' testimony, and points to the travel expenses which were paid, in reality, for appellees' personal meeting.

Appellant claims *Lemon v. Little,* 21 S.D. 628, 114 N.W. 1001 (1908), provides a forfeiture of compensation for violations of SDCL 60–2–13. *Little* addressed an agent who was serving principals on both sides of a leasehold transaction. *Id.* 114 N.W. at

---

**1.** Since evidence was introduced that appellees were paid monthly, pursuant to SDCL 60–1–4, there is a presumption of monthly hiring. *See* A Personal Damage Remedy for the Employee at Will: A Reappraisal of a Recent Proposal, 22 S.D.L.Rev. 430 (1977).

1004. The Court held that the agent could not be compensated twice. Therefore, the party who was unaware of the double agency was absolved from paying the agent.

█ The facts herein fail to exhibit a double agency as in *Little.* Thus, *Little* is inapposite,[2] violations of SDCL 60–2–13 do not automatically invoke a flat denial of compensation as it is too blunt of a judicial instrument. A flat denial of compensation may be wholly inadequate to the employer where little or no compensation is due the employee for the employer's damages may be greater. Alternatively, the remedy may be harshly inequitable to an employee who committed a minor violation and is owed a large amount of compensation. We hold that for violations of SDCL 60–2–13, an employer may claim and prove up damages. This is in accord with the general statutory format as, under SDCL 60–2–16, an employee guilty of willful or wanton misconduct, although liable for damages, may still collect compensation for services properly rendered.

Appellees cite *Jewel Tea Co. v. Grissom,* 66 S.D. 146, 279 N.W. 544 (1938), as support for their position. However, *Jewel* addresses the post-termination activities of employees which is not at issue here.

Although South Dakota has yet to explicitly rule on pretermination employee activities, a recent Rhode Island case held that pretermination solicitation of an employer's customers is a breach of loyalty to the employer. *Rego Displays, Inc. v. Fournier,* 379 A.2d 1098 (R.I.1977). *See also, Inland Rubber Corp. v. Triple A Tire Serv., Inc.,* 210 F.Supp. 880 (D.C.N.Y.1962); *E.W. Bruno Co. v. Friedberg,* 21 App.Div.2d 336, 250 N.Y.S.2d 187 (1964); *Sanitary Farm Dairies, Inc. v. Wolf,* 261 Minn. 166, 112 N.W.2d 42 (1961); *S. California Disinfecting Co. v. Lomkin,* 183 Cal.App.2d 431, 7 Cal.Rptr. 43 (1960).

█ Although appellees Bushman and Ritter breached their duty to appellant under SDCL 60–2–13, this violation was compensated by the $50.00 verdicts entered below. We are unwilling to allow a flat denial of compensation to appellees for a violation of SDCL 60–2–13. The matter of damages for disloyalty was tried by the jury and is sustainable. This does not foreclose a meritorious discussion on the bonus issue.

## II.

█ In 1976, appellees signed a form declaring that bonuses were discretionary. Appellant contends that from 1976 forward, bonuses could be denied. As statutory authority, appellant cites SDCL 60–1–5 which reads:

Where after the expiration of an agreement respecting the wages and the term of service the parties continue the relation of employer and employee, they are presumed to have renewed the agreement for the same wages and term of service.

SDCL 60–1–5 covers two aspects of employment: wages and length of service. In order to apply SDCL 60–1–5 in the instant case, appellant would have to concede that bonuses are covered in the conceptual ambit of wages. Appellant would then be in the posture of claiming it can withhold wages at its discretion, which we could not condone. Since SDCL 60–1–5 applies to settings where new wage agreements are lacking, it is inapplicable herein because appellees' wages were altered annually.

Ample authority does exist upholding bonuses. *Powell v. Republic Creosoting Co.,* 172 Wash. 155, 19 P.2d 919 (1933), holds that bonuses paid annually over several years impliedly become part of an employee's salary; *Hartung v. Billmeier,* 243 Minn. 148, 150, 66 N.W.2d 784, 787 (1954), holds that the oral promise "You boys stick with me for five years and I will give you a hundred dollars a year bonus" is an enforce-

---

**2.** *Brown County v. Zerr,* 67 S.D. 516, 295 N.W. 289 (1940), as offered by appellant, is also inapposite. *Brown* dealt with a County Commissioner who purchased a truck for his own usage, but had the County pay for it. *Brown* is

based upon a violation of a fiduciary relationship and the imposition of a constructive trust. In the case at bar, appellees did not generate funds or hold property at appellant's expense.

able contract; and *Hobson v. Eaton,* 399 F.2d 781 (C.A.Ohio 1968), *cert. denied,* 394 U.S. 928, 89 S.Ct. 1189, 22 L.Ed.2d 459 (1969), holds that a bonus may become part of employment and therefore compensation for services. *See also,* 56 C.J.S. *Master and Servant* § 98 (1948).

Since appellant did change employment terms such as salary and expense accounts annually, the 1976 discretionary bonus letter endured until the 1977 change in employment terms. Most notably, appellant's 1979 letter setting forth a bonus and salary schedule in a commission format was silent on the issue of discretionary payment of bonuses. Since bonuses were automatically paid to appellees for several years after the 1976 letter, the bonuses became a contractual term of employment similar to commissions, salary or expense accounts. Indeed, appellant's August 31, 1980, accounting statements listed, as balances due, the amounts each appellee claimed was due him.

It is obvious, under the facts at bar, that appellees' right to collect their bonuses could not be defeated by the unilateral act of appellant. Clearly, there was a sufficient consideration for these bonuses, namely, continuation of the yearly work on the part of appellees for appellant. After a yearly bonus scheme was recognized by all of the parties, appellant could not arbitrarily withdraw bonus payments and thus defeat the expectations of appellees. The judgment n.o.v. is affirmed.

### III.

■ Appellant admits that it failed to pay appellee Ritter's premium for group medical coverage while appellee Ritter was still in its employ. Per agreement, appellant was to bear this expense. Appellant's contention is that it is only liable for the cost of the monthly premium rather than appellee Ritter's medical expenses and since appellee Ritter did not introduce evidence as to the cost of the premium, he failed to meet his burden of proof and is foreclosed from collecting.

As authority, appellant cites SDCL 21–2–1 and SDCL 21–1–5. SDCL 21–2–1 provides:

For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom. No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and their origin.

And SDCL 21–1–5 provides:

Notwithstanding the provisions of these statutes, no person can recover a greater amount in damages for the breach of an obligation than he could have gained by the full performance thereof on both sides, except in the cases specified in statutes providing exemplary damages or penal damages, and in statutes relating to damages for breach of promise to marry, for seduction, or wrongful injuries to animals.

SDCL 21–2–1 does not impede appellee Ritter's claim. It was foreseeable that when appellant, without notification, discontinued appellee Ritter's medical coverage that an accident could occur before appellee Ritter was notified of the termination. Additionally, the evidence at trial was sufficient to establish both the nature and the origin of appellee Ritter's medical expenses.

Likewise, SDCL 21–1–5 leaves appellee Ritter unscathed. Full performance of the obligation on appellant's behalf would have provided appellee Ritter with coverage of his family medical expenses, less deductibles. Appellee Ritter fully performed his portion of the bargain by being employed by appellant. As set forth in Corpus Juris Secundum:

A benefit plan offered by an employer to all its employees and impliedly accepted by them through remaining in the employment constitutes a contract between the employer and employee, the service rendered by the employee being a

sufficient consideration to support the employer's promise to pay benefits. In such case the plan is not a mere gratuity or charity conferring on the employees and their dependents no legal rights, and payments of benefits under the plan are not mere gratuities to be awarded in the discretion of the corporate employer's officials.

56 C.J.S. *Master and Servant* § 169 (1948).

To focus on the payment of premiums as appellant would have this Court do, is to obscure the purpose of the contract. Employees desire medical coverage, rather than the mechanical act of paying premiums. Employers gain from having valued employees healthy and protected from financial ruin.

Appellee Ritter introduced evidence of his medical expenses incurred due to appellant's failure to keep medical coverage in force. Perhaps appellee Ritter could have mitigated his damages by using the "conversion rights" offered to him on September 8, 1980, after the accident and before his termination. Yet, the record is incomplete as to the terms, coverage, and expense of the "conversion rights" offered to appellee Ritter. Therefore, it is impossible for us to measure appellee Ritter's ability to mitigate.

Although South Dakota case law on point is unavailable, a South Carolina case is instructive. In *Salters v. Commercial Credit Corp.*, 268 S.C. 439, 234 S.E.2d 491 (1977), a retired employee brought an action against his employer for failure to keep group medical insurance coverage in effect until he reached age 65. The employer notified the employee that he was eligible for Medicare benefits. However, the employee chose not to mitigate his damages by accepting Medicare and sued his employer. The employee's evidence consisted of a letter and a telephone conversation from the employer stating that he would have insurance coverage. Upon this state of the record, the employee prevailed.

Appellee Ritter provided the trial court and the jury with evidence of his damages. Appellant had ample opportunity to convince the jury otherwise but failed to do so.

Affirmed.

All the Justices concur.