STANLEY COUNTY, Plaintiff, v. JACKSON COUNTY et al., Defendants.

SAME v. HAAKON COUNTY et al.

(154 N. W. 806.)

(File Nos. 3888, 3889. Opinion filed November 17, 1915. Rehearing denied December 20, 1915.)

1. **Mandamus—County Division—Apportionment of County Debts—Mandamus as Remedy.**

In a proceeding by mandamus, by a county against two new counties carved out of the original territory of the plaintiff county, to compel the new counties to pay their alleged proportionate part of the indebtedness of the original county, held, that, in view of defenses that part of the warrant indebtedness in question was illegal, that the amounts claimed by plaintiff to be due are in excess of the just dues, that plaintiff retained and has in possession property and funds acquired prior to division of the plaintiff county, which should

be charged to plaintiff and taken into account in determining the amount justly due plaintiff from defendants, that defendants are without funds and unable to pay what is justly due until the amount is raised by taxation, and that a determination of such amount will require evidence and investigation of facts concerning the financial affairs of plaintiff and defendant counties, mandamus is not the proper remedy; the rights of the parties not being clearly established, which rights should be determined by the court in an ordinary action.

2. Courts—Original Jurisdiction—Supreme Court—Mandamus—Division of County Indebtedness—New Counties.

The Supreme Court is without original jurisdiction to entertain an application for writ of mandamus by one county against two new counties carved from plaintiff county, to compel defendants to pay their proportionate shares of the debts of the original county, even though plaintiff had shown itself entitled to the relief sought.    Following Everett v. Hughes County, 1 S. D. 365, 47 N. W. 296.

3. Counties—Division of Counties—Apportionment of Debts—Apportionment From What Date?—Date of Announced Division Election Result—Date of Commencement of New County's Business—Statutes.

The result of a county division election was determined and announced on November 12, 1914; the organization of two new counties created as the result of the election and carved from the territory of the original county was completed and transaction of public business commenced therein on February 1, 1915.    Laws 1907, Ch. 100, Sec. 3, as amended by Laws 1909, Ch. 81, Sec. 1, relating to apportionment of county debts, provides that the indebtedness of the original county, whether bonded, warrant, or floating, shall be apportioned "to each new division created ratably upon the basis of the last equalized assessment previous to the division thereof, and each * * * division shall be charged with, assume and pay its just portion of said debt upon the basis of such apportionment."    Sec. 2 of said Ch. 100, provides that, if the vote is favorable to division, the Governor shall proceed to organize the new counties, but that "until such organization is perfected the said portion of such county shall, for criminal and civil purposes, remain and be a portion of such * * * county." Held, that the apportionment of such indebtedness should be made as of November 12, 1914; that the legislative intent of the amendment of 1909 was that the apportionment should be made as of date of the division; and that the Legislature, by said Sec. 2, having provided that, for the purposes specifically mentioned, the new county should remain a portion of

the original county, it will be considered a separate county for all other purposes.

4. Counties—Division of County—Apportionment of Debts—Basis of Apportionment—"Just Portion"—Pro Rata Share—Credits for Property and Funds on Hand.

In determining the basis of arriving at the relative portions of indebtedness of an original county out of which two other counties have been carved as the result of a county division election, held, that, it appearing that the county representing the remainder of the original county after such division had in possession property and funds acquired prior to the division, the basis of apportionment of such debts, under Laws 1909, Ch. 81, Sec. 1, providing that each county shall·pay its "just portion" of the indebtedness, is that each county should pay its pro rata share of the legal indebtedness after being allowed any credit to which it might show itself entitled, that is, there must be a settlement in nature of general accounting between the new counties, and the new counties be required to pay their pro rata share of the legal indebtedness of the old county after being allowed a proper credit for the property and funds retained by the old county.

Original proceedings by Stanley County, against Jackson County and others, and against Haakon County and others, for writs of mandamus, to compel defendant counties to pay their pro rata shares of the indebtedness of plaintiff county. Peremptory writs denied.

*Webb Lambert,* for Plaintiff.

*O. K. Whitney,* State's Attorney, *Magnus K. Easthouse,* State's Attorney, and *A. K. Gardner,* for Defendants.

(1) To point one of the opinion, Plaintiff cited: 26 Cyc. 310; Hempstead County v. Graves, 44 Ark. 317; Crow v. Dallas, 13 Ark. 625; Riverside County v. Sanbernardino County, 134 Cal. 517, p. 520; Kings County v. Johnson, 104 Cal. 198; Blaine County v. Smith, 5 Idaho, 255.

Defendants cited: Bailey v. Lawrence County, 2 S. D. 533; Custer County v. Bank, 18 S. D. 274; 26 Cyc. 306-307; State v. Snodgrass, 98 Ind. 546; Midland School Dist. v. Midland School Dist., 40 Mich. 551; State v. Durant, (S. C.) 51 S. E. 186; State v. Johnson, (Wis.) 80 N. W. 1105; Custer County Bank v. Custer County, 18 S. D. 274; Oldham v. Tarrel, (Tex.) 104 S. W. 1040; Shell v. Tarrell, (Tex.) 102 S. W. 109; Beals v. Supervisors, 28 Cal. 449.

(2) To point two of the opinion, Defendants cited: Everett v. Board, 1 S. D. 365; State ex rel. v. Huron, 23 S. D. 153; McCoy v. Handlin, (S. D.) 153 N. W. 361 and 370; Sections 2 and 3, Article 5, Constitution; State v. Fabrick, (N. D.) 117 N. W. 862; State ex rel. v. Holmes, (N. D.) 114 N. W. 367; State v. McLane County, (N. D.) 92 N. W. 385; State v. Nelson, (N. D.) 45 N. W. 33; State v. Gottbrecht, (N. D.) 117 N. W. 864; Homesteaders v. Macom, (Okla.) 103 Pac. 691.

(3) Under point three of the opinion, Plaintiff submitted that: The territory contained in Haakon and Jackson counties was and remained a part of Stanley county until said counties were properly organized; and cited: Clark v. Goss, 12 Tex. 395, 62 A. M. Dec. 531; Meehan v. Zeh, 77 Minn. 63, 79 N. W. 655; O'Shea v. Twohig, 9 Tex. 336; Milk v. Kent, 60 Ind. 226; Buckinghouse v. Gregg, 19 Ind. 401; People v. McGuire, 32 Cal. 140; Keating v. Marble, 39 Kan. 370; Behr v. Willard, 11 Neb. 601; State v. Walker, 17 Ohio, 135; Murray v. Davis, 21 N. D. 64; 128 N. W. 305; Blaine Co. v. Smith, 5 Idaho, 255; State v. Clevenger, 20 Am. St. Rep. 676-680, and note.

Defendants cited: State ex rel. v. Hughes, 1 S. D. 292 at 301; Chapter 100, Laws 1907; Chapter 81, Laws 1909.

(4) To point four of the opinion, Plaintiff submitted that: Nothing is said in the statute about the division of the assets and public property located within the old county. Therefore the old rule in regard to assets and public property is still the law, having been left undisturbed by the Legislature, and the public property within the present limits of Stanley county belongs to that county; and cited: Laws 1909, Ch. 81; Los Angeles v. Orange Co., 97 Calif. 329; Commissioners of Dare Co. v. Commissioners of Currituck Co., 95 N. C. 189; Commissoners of Crawford Co. v. Commissioners of Marion Co., 16 Ohio, 467; Washington Co. v. Weld Co., 12 Col. 152; Cooke Co. v. School District No. 12, 12 Col. 453; Board of Supervisors v. Board of Supervisors, 64 Miss. 534; 11 Cyc. 354-355; Laramie Co. v. Albany Co., 92 U. S. 307; Lawrence Co. v. Meade Co.; 6 S. D. 528; Dare Co. v. Currituck Co., 95 N. C. 189; Burleigh Co. v. Kidder Co. (N. D.) 125 N. W. 1083; Washngton Co. v. Weld Co., 12 Colo. 152; Mills Co. v. Brown Co., (Tex.) 29 S W. 650; Cooke Co. v. School District No.

12, 12, Colo. 453; Los Angeles v. Orange Co., 97 Cal. 329; Supervisors v. Supervisors, 64 Miss. 534; Supervisors v. Supervisors, 58 Miss. 61; Blaine Co. v. Smith Co., 5 Idaho, 255, 48 Pac. 286; Maxwell on Interpretation of Statutes, (5th Ed.) p. 461; Black on Interpretation of Laws, 237; 11 Cyc. 356, and cases there cited. The Court, in any action or proceeding for apportionment, has no right to inquire into the validity of the debts of the old county. Blaine Co. v. Smith, 5 Idaho, 255, 48 Pac. 286; Orange Co. v. Los Angeles Co., (Cal.) 46 Pac. 173; Coniniss v. Barker, 16 Kan. 498; Tulare v. Kings Co., 49 Pac. 8; Los Angeles Co. v. Orange Co., 97 Cal. 329; Mills Co. v. Brown Co., 29 S. W. 850; Lawrence Co. v. Meade Co., 6 S. D. 528, 62 N. W. 131; Brown Co. v. Rock Co., (Neb.) 70 N. W. 943; Halliday Co. v. Sweet Grass Co., (Mont.) 48 Pac. 553; Colusa v. Glenn Co., 49 Pac. 457; In re Freemont Co. et al., 8 Wyo. 1.

Defendant cited: Lawrence County v. Meade County, 10 S. D. 175; Dring v. St. Lawrence, 31 S. W. 197; Riverside County v. San Bernardino, (Cal.) 66 Pac. 788; Chap. 100, Laws 1907.

POLLEY, J. The above cases—proceedings in mandamus—grow out of the same transaction, and will be considered together.

At the general election of 1914, Stanley county was divided and the counties of Haakon and Jackson created from the territory detached from Stanley county. It is alleged in the affidavit filed in each case, and upon which an alternative writ of mandamus was issued in each case, that at the time of the said division there were certain outstanding debts and obligations against said Stanley county greatly in excess of the funds or means on hand with which to pay the same; that said county, as at present existing, is liable for the payment of said outstanding indebtedness; but that, under the law relative to the division of existing counties and the creation of new ones, the counties of Jackson and Haakon should each pay to Stanley county its proportionate share of the said indebtedness. Plaintiff alleges that it has made demands upon said counties (the above-named defendants) for their proportionate shares of said indebtedness, but that payment thereof has been refused by them, and plaintiff seeks a peremptory writ of mandamus commanding the defendants each to assume and pay to plaintiff, in warrants, certain specific sums of money alleged by plaintiff to be due it as defendants' pro rata share of

the warrant indebtedness of Stanley county at the time of the said division.

Defendants made separate return to said alternative writs, wherein, among other defenses, they alleged that the amounts claimed by plaintiff were greatly in excess of the amounts justly due from defendants; that warrants aggregating a large part of the amounts demanded by plaintiff had been illegally issued, and are therefore void; that plaintiff retained, and now has in its possession, a large amount of property and funds that were acquired prior to said division and that should be charged to plaintiff and be taken into account in arriving at the amount justly due plaintiff from defendants; that the amount of the indebtedness due plaintiff from defendants and the amount defendants should pay plaintiff has never been ascertained or determined; that defendants are without funds and unable to pay the amount demanded by plantiff, or such an amount as may be legally due plaintiff until the same shall have been raised by taxation. Defendants further allege that a determination of the amount justly due the plaintiff from defendants will necessitate the taking of testimony and an investigation of the facts relative to the financial affairs of plaintiff and defendant counties, and that, for that reason, mandamus is not the proper remedy for plaintiff to pursue.

[1] The issues tendered by the answers of these defendants are the same in legal effect as the issues that were passed upon by this court in Bailey v. Lawrence County, 2 S. D. 533, 51 N. W. 331; and what is said there is equally applicable to the facts involved in these cases. In that case the plaintiff undertook, by mandamus, to compel the county to pay interest coupons due on certain bonds outstanding against the county. In its return to the alternative writ the county denied the validity of the bonds from which the coupons were detached and the liability of the county thereon, and also denied that at the time of the issuance of the alternative writ the county had funds on hand subject to the payment of said coupons. In considering these questions, the court said:

"The validity of the bonds and coupons being controverted, and relator's legal right not being clearly established, the writ cannot be issued until this is done. This is a question for a trial court to determine."

A similar rule was announced in Custer County Bank v. Custer County, 18 S. D. 274, 100 N. W. 424. That was an action at law to recover on certain road warrants issued by the county of Custer. It was contended by the defendant that plaintiff should have proceeded by mandamus, instead of ordinary action against the county, but, in reply to this contention, the court said: ·

"But this is clearly untenable, for the reason that the defendant county denied its liability upon the ground that a part of the warrants had been paid, and on the further ground that the warrants were illegal and void, as having been issued in violation of constitutional provisions. It was necessary, therefore, that the rights of the parties should be determined by a judgment of the court in an ordinary action, and not in the first instance by mandamus."

In the present cases the defendants not only set up the illegality of a considerable number of the warrants involved, but present numerous other issues that can be determined only by a judgment in an ordinary action.

[2] In addition to the above defense, and others that need not be noticed, defendants object to a consideration of these cases on the ground that no sufficient reason is shown why this court should exercise original jurisdiction herein. This objection is well taken, and should be sustained, even though plaintiff had shown itself entitled to the relief sought. This subject was considered at great length in Everitt v. Hughes County, 1 S. D. 365, 47 N. W. 296, and again in Telephone Co. v. City of Huron, 23 S. D. 153, 120 N. W. 1008, and further discussion is unnecessary; but, for the reasons stated in Everitt v. Hughes County, the alternative writs of mandamus issued in these cases should be quashed and the cases dismissed.

So far as the present cases are concerned, it is not necessary to determine the other issues presented; but the matters in dispute between the parties hereto must be settled, in or out of court, and, as a guide in such future proceedings as may be had, we deem it proper to express our opinion upon certain questions that are presented by the pleadings.

[3] The organization of Jackson and Haakon counties was completed and the transaction of public business commenced on the 1st day of February, 1915; and it is the contention of the

plaintiff that the apportionment of the indebtedness of the new counties to the old should be made as of that date. The vote which resulted in the division of Stanley county and the creation of the new counties was canvassed and the result announced on the 12th day of November, 1914; and it is the contention of the defendants that the apportionment of the indebtedness of the new counties to the old should be made as of that date. Section 3, c. 100, Laws of 1907, as amended by section 1, c. 81, Laws of 1909, under the provision of which the apportionment in question must be made, provides that the indebtedness of the original county, whether bonded indebtedness, warrant indebtedness, or floating indebtedness—

"shall be apportioned to each new division created ratably upon the basis of the last equalized assessment previous to the division thereof, and each   *   *   *   division shall be charged with, assume and pay its just portion of said debt upon the basis of such apportionment."

While this statute does not, in terms, declare that the apportionment shall be made as of the date of the division of the old county, rather than at the organization of the new, it is clear from the reference made to the *division* that it was the intent of the Legislature that the apportionment should be made as of the date of the division. The question then becomes: Did the division of the old county take place at the time of the canvass of the vote by which the division was made, or at the time of the completion of the organization of the new counties? This question, like the previous one, is not answered in direct terms, but the legislative intent is made clear by the language used in section 2, c. 100, Laws of 1907. This section provides that, if the vote shall be favorable to division, the Governor shall proceed to organize the new counties, but—

"until such organization is perfected the said portion of such county shall, for criminal and civil purposes, remain and be a portion of such.   *   *   *   county."

If the division was not to take place until the organization of the new counties had been perfected, this latter provision would have been wholly useless and unnecessary. The territory constituting the new counties would still have remained a part of the old county, not for criminal and civil purposes only, but for all

other purposes, and this, too, without any saving clause in the law. To attach one county to another for judicial purposes, or for any other purpose, necessarily implies the existence of two counties; and this is as true where one of such counties has been created out of territory formerly constituting a part of the other as where they had previously existed as separate counties. Moreover, the Legislature having provided that, for the purposes specifically mentioned, the new county should remain a portion of the original county, it will be considered a separate county for all other purposes. Meehan et al. v. Zeh et al., 77 Minn. 63, 79 N. W. 655; State v. Hughes County, 1 S. D. 292, 46 N. W. 1127, 10 L. R. A. 588.

We believe the apportionment of the indebtedness should be made as of the 12th of November, 1914.

[4] It is next contended by plaintiff that Jackson and Haakon counties should pay their pro rata share of the total indebtedness of Stanley county, without allowing any credit to those counties for the public property retained by Stanley county, but which was paid for by that county before the division. On the other hand, defendants contend that they are entitled to a credit for their pro rata share of the property and funds in the possession of Stanley county at the time of the division. A determination of this question depends upon the interpretation of the language of the statute. Section 1, c. 81, Laws of 1909, provides that each county shall pay its *"just portion"* of the indebtedness. If plaintiff's position is correct, then the words *"just portion"* have no meaning whatever, and could as well have been omitted. If it had been the intent of the Legislature to require each county to pay its pro rata share of the total indebtedness upon the basis of the said apportionment, it could, and probably would, have said so in so many words, and the words *"just portion"* would have been wholly unnecessary. By requiring each county to pay its just portion of the indebtedness, we believe the Legislature meant that each county should pay its pro rata share of the legal indebtedness after being allowed any credit to which it might show itself entitled. In other words, there must be a settlement in the nature of a general accounting between the new counties and the old, and the new counties be required to pay their pro rata share of the

legal indebtedness of the old county after being allowed a proper credit for the property and funds retained by the old county.

The peremptory writs are denied.