**MICHAEL–CURRY COMPANIES, INC., Appellant,**

v.

**KNUTSON SHAREHOLDERS LIQUIDATING TRUST, et al., Respondents.**

**No. CX–87–2524.**

Court of Appeals of Minnesota.

May 24, 1988.

Review Denied June 29, 1988.

Marvin T. Fabyanske, Gary F. Albrecht, Fabyanske, Svoboda, Westra, Holper & Davis, P.A., St. Paul, for appellant.

John L. Devney, J. Patrick McDavitt, Briggs and Morgan, St. Paul, for respondents.

* Acting as judge of the Court of Appeals by ap-

Heard, considered and decided by LANSING, P.J., and SCHUMACHER and LOMMEN,* JJ.

## OPINION

SCHUMACHER, Judge.

This is an appeal from an order denying a temporary injunction. The trial court concluded that appellant had an adequate legal remedy that appellant had not proved immediate and irreparable harm or that success on the merits was likely; that an injunction would pose an undue hardship on respondents; and that the administrative burden placed on the court dictated that an injunction should not issue. Michael–Curry Companies, Inc. appeals.

## FACTS

Respondent Knutson Shareholders Liquidating Trust ("Trust") was formed as part of the liquidation plan of Knutson Companies. The Trust was formed in August of 1985 and Knutson Companies dissolved in September of 1985. On September 16, 1985, appellant Michael–Curry Companies executed an agreement with the Knutson Companies to purchase D & L Building, Inc., a Wyoming construction company. D & L was one of Knutson's three subsidiaries, and was actively working on sixteen projects which had contracts in amounts varying from approximately $44,000 to $9.6 million. Pursuant to the sale agreement, Michael–Curry agreed to complete projects and to "indemnify and save harmless" Knutson from claims arising out of the projects on work performed from and after the closing of the sale. Knutson agreed to "indemnify, defend, and hold harmless" Michael–Curry from all claims arising from work performed prior to the closing. Knutson retained its own claims for $818,000 in damages arising prior to the sale, and a profit-sharing plan was created.

The parties amended the agreement on December 27, 1985. The amendment provided that Michael–Curry would assume liability for defending and indemnifying the Trust for all claims arising out of projects

pointment pursuant to Minn. Const. art. 6, § 2.

unfinished at the time of the transfer and for all projects subsequently entered into by D & L. The Trust would be liable only for projects completed prior to the transfer, and it abandoned its right to pursue the $818,000 damage claims and its rights under the profit-sharing plan. The amendment limited the Trust's duty to defend and indemnify to $250,000, the purchase price of the stock, and provided that the Trust unconditionally guaranteed a total profit of $125,000 on the unfinished projects.

Prior to the sale Knutson had obtained construction bonding from Travelers Indemnity Company. Knutson was not released from the indemnity obligation by the sale. After the sale, the Trust agreed to provide Travelers with a letter of credit to secure repayment of any money Travelers paid on the bonds. The letter of credit for $7 million was obtained by pledging $1 of Trust assets for each $1 of credit.

In December, 1987 Michael–Curry discovered that the letter of credit, then $2.3 million, was to be reduced to $1 million, freeing $1.3 million for distribution to the Trust's six beneficiaries. On December 16, 1987 Michael–Curry obtained a temporary restraining order preventing distribution of any trust assets. Michael–Curry's motion for a temporary injunction was heard on December 23, 1987, at which time Michael–Curry submitted an affidavit alleging that losses, costs and expenses on the projects covered by the profit guaranty totaled $4.2 million. Trust assets were approximately $3.9 million.

On December 29, 1987, the trial court denied the temporary injunction and Michael–Curry appeals. We reverse.

## ISSUE

Did the trial court abuse its discretion in denying appellant's motion for a temporary injunction?

## ANALYSIS

■ The standard of review on appeal from a denial of a temporary injunction is whether the trial court clearly abused its discretion by disregarding either the facts or equitable considerations. *Thompson v.*

*Barnes,* 294 Minn. 528, 533, 200 N.W.2d 921, 925 (1972). The moving party must show irreparable harm and inadequate legal remedy. *Cherne Industrial, Inc. v. Grounds & Associates, Inc.,* 278 N.W.2d 81, 92 (Minn.1979). Relevant factors include the nature of the relationship between the parties prior to the dispute; the harm suffered by the moving party if the injunction is denied, compared to the harm suffered by the nonmoving party if granted; the likelihood of success on the merits; and the administrative burden of enforcing the injunction. *Dahlberg Brothers, Inc. v. Ford Motor Co.,* 272 Minn. 264, 274–75, 137 N.W.2d 314, 321–22 (1965).

### 1. Irreparable Harm

■ Michael–Curry argues that the Trust has an absolute and unconditional duty to reimburse it for all losses incurred on several building projects and that if the funds from which it would be compensated are distributed to the Trust beneficiaries, collection of a judgment will become difficult or impossible.

The primary purpose of the Trust is to liquidate and distribute Trust assets to the six beneficiaries. Michael–Curry's claim against the Trust pursuant to the guaranty is for $4.2 million. While the Trust maintains that Michael–Curry's damages are limited by agreement to $250,000, interpretation of these two conflicting agreements should be resolved at a hearing on the merits. If the trustees distribute assets, pursuant to the express trust purpose of liquidation, any judgment against the Trust would be impossible to collect.

The trial court found that Michael–Curry had not established any irreparable harm. However, inability to satisfy a monetary judgment has been recognized as irreparable harm sufficient to justify injunctive relief. *Central States v. Admiral Merchants Motor Freight, Inc.,* 511 F.Supp. 38, 43 (D.Minn.1980) *aff'd* 642 F.2d 1122 (8th Cir.1981). Michael–Curry could pursue recovery from the beneficiaries, but from a practical standpoint, recovery would be much more difficult. Difficulty in col-

lecting a judgment is sufficient to establish irreparable injury. *Tri–State Generation & Transmission Association, Inc. v. Shoshone River Power, Inc.*, 805 F.2d 351, 355 (10th Cir.1986). The reasoning used by the federal courts in these cases is persuasive. The trial court abused its discretion in finding no irreparable harm.

### 2. Adequacy of Legal Remedy

■ The trial court concluded that attachment would be an adequate remedy at law for Michael–Curry. Minn.Stat. §§ 570.01–.14 (1986). Where there is an adequate remedy at law, equitable relief is not available. *AMF Pinspotters, Inc. v. Harkins Bowling, Inc.*, 260 Minn. 499, 504, 110 N.W.2d 348, 351 (1961). Successful attachment requires proof of intent to delay or defraud, intent to avoid creditors, or commission of a felony giving rise to the claim for which relief is sought. Minn. Stat. § 570.02, subd. 1 (1986). Because the sole purpose of the Trust was to liquidate and distribute Trust assets, proof of fraudulent or dilatory intent to dispose of the assets or intentional avoidance of creditors would be virtually impossible, making attachment unavailable. The trustees in this case are bound by the trust instrument to distribute assets, and the trial court specifically found that future distributions are intended. The trustees have submitted affidavits stating that they have no intent to delay or defraud creditors.

The trial court found that attachment was an adequate legal remedy if Michael–Curry could prove the grounds required by the attachment statute. However, due to the nature of this trust, the record reflects that it would be impossible for Michael–Curry to prove any of the statutory grounds for attachment. Thus, the trial court clearly abused its discretion in finding that attachment as a legal remedy precluded issuance of a temporary injunction.

### 3. Prior Relationship Between the Parties

The pre-dispute relationship between Michael–Curry and the Trust is contractual. As buyer and seller, the parties agreed to modify their prior agreement with respect to D & L. The risk of the Trust being enjoined from distributing its assets should have been contemplated by the Trust when it bound itself to the amended agreement.

### 4. Balancing of the Hardships

■ Michael–Curry maintains the Trust is obligated to reimburse it for $4.2 million in losses under the guaranty of profitability. The Trust contends its maximum liability is $250,000. If the injunction is denied, Michael–Curry risks losing its opportunity to recover $2.9 million, which represents unencumbered trust assets as of December 21, 1987.

The Trust argues that its beneficiaries would be harmed by a delay in distribution of Trust assets and increased supervision of Trust investments and expenses. However, under the injunctive remedy proposed by Michael–Curry, the Trust would be free to invest its assets as the trustees direct. Individual expenses of up to 1% of Trust assets could be paid without judicial supervision of any kind. Expenses constituting more than 1% of Trust assets could be paid upon judicial approval. The Trust has not presented an accounting of its expenses, and the nature and extent of any harm alleged is not apparent. The hardship suffered by the Trust is minimal, and can be significantly reduced if a hearing on the merits of Michael–Curry's complaint is accelerated. The potential hardship suffered by Michael–Curry is substantial.

### 5. Likelihood of Success on the Merits

■ The trial court found that Michael–Curry failed to demonstrate the likelihood of success on the merits. The merits of Michael–Curry's complaint involve claims for breach of the guaranty agreement and the warranty of profitability.

Paragraph 6 of the amended agreement limits the Trust's indemnity to $250,000 and provides in relevant part:

*Limitation of Seller's Indemnity.* The maximum amount of any claim by Buyer against Seller, its successors and assigns, including any transferee of the assets of Seller, pursuant to the liqui-

dation and dissolution of Seller or otherwise, for indemnification hereunder, shall be limited to the total sum of Two Hundred Fifty Thousand Dollars ($250,000.00). The foregoing limitation shall be a maximum limit for aggregate claims which Buyer may assert against Seller, of any nature, whether such claim be for indemnification, reimbursement of attorneys' fees, or otherwise.

Paragraph 4 of the amended agreement is entitled *"Seller's Indemnity,"* and contains the "indemnify, defend, and hold harmless" language. This language refers to the Trust's duty to indemnify Michael–Curry for any damage claims or other losses arising out of construction projects completed prior to the sale, and to any breach of the Trust's duty to perform. The language of paragraph 6 quoted above applies to the type of indemnification described by and anticipated in paragraph 4. By their own terms, these two paragraphs should be read and construed together.

The profitability guarantee in paragraph 8 of the amended agreement provides in relevant part:

> Trust absolutely and unconditionally guarantees to the Buyer, its successors and assigns, that the project profits realized by Buyer on the construction projects described in Exhibit B to the Agreement for the period commencing July 1, 1985, until such projects are completed shall be not less than One Hundred Twenty-five Thousand Dollars ($125,000.00).

Further, paragraph 8(b) provides that the guaranty is "irrevocable, absolute and completed," and paragraph 8 (a) provides for attorney fees in the event of a breach. Because of the strong unconditional language, argument can be made that this provision is independent of the limitations of paragraphs 4 and 6. Claim reimbursement, attorney fees and costs are provided for in paragraph 4, subject to the limitations of paragraph 6. Claim reimbursement, attorney fees and costs are also provided for in paragraph 8. Such a provision would be redundant if paragraph 8 was to be construed with, and subject to, the limitations of paragraphs 4 and 6. Ultimate interpretation of the agreements will be made at a hearing on the merits. However, Michael–Curry has met its burden of showing a probability of succeeding on its argument that its claim is not limited to $250,000, and the injunction would properly serve to maintain the status quo.

### 6. Administrative Burden

The administrative burden of issuing the temporary injunction is slight. Michael–Curry proposed permitting the Trust to pay all bills or expenses amounting to less than 1% of Trust assets, and to pay other expenses amounting to more than 1% subject to approval of the court. No evidence was offered by the Trust as to the nature or extent of its expenses, and the trial court may limit its supervision to the extent necessary to reduce its burden.

### DECISION

Michael–Curry met its burden of proof below and the trial court clearly abused its discretion when it failed to grant the temporary injunction. We remand to the trial court with directions to issue a temporary injunction which prevents distribution of any trust assets to beneficiaries, and which permits investment of trust assets and payment of trust expenses in accordance with this opinion.

Reversed and remanded.