[No. C006113. Third Dist. June 4, 1990.]

CLEO HORAN, Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA, Defendant and Respondent.

## Counsel

John E. Virga for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Richard M. Frank and Floyd D. Shimomura, Deputy Attorneys General, for Defendant and Respondent.

## Opinion

**SCOTLAND, J.**—In this case, we are asked to decide whether plaintiff, who contracted with the California Lottery Commission (the Commission) to sell lottery tickets, is entitled to the proceeds from an instant game lottery ticket which was stolen from her inventory by a teenage employee who scratched off the ticket, discovered it was a $100,000 winner, then returned it to the retailer. We conclude, as did the trial court, that plaintiff is not entitled to the prize money since she did not play the winning ticket consistent with the principle of fair chance as required by the Commission's rules and the game of lottery itself.

### Facts and Procedural History

As the trial court observed, "Levin's Law of Mathematics suggests with some whimsy that 'when the odds are a million to one against something happening, the chances are 50/50 that it will.' In this case, it did."

During the first year of operation of the state lottery, plaintiff contracted with the Commission to sell scratch-off lottery tickets at the delicatessen she

operates in Fair Oaks. In July 1986, a 17-year-old employee stole a number of "Instant Game 7—The Good Life" tickets from plaintiff's inventory. The minor scratched the coating off the tickets and discovered a $100,000 winner among them. He gave the winning ticket to his mother without telling her it was stolen. She submitted it to the Commission for redemption.

Thereafter, "[m]ixing roughly equal parts of stupidity and cupidity, the minor sought to legitimize his acquisition, and thus somehow to smooth the path for payoff, by a rather naive and selective 'confession' and tender of purchase price to the [retailer] . . . ." (Again, quoting the trial court.) While he disclosed there was a winning ticket among those he had stolen, he did not tell plaintiff the amount of the prize. Rather, he gave her $40 and a list of the numbers of the tickets he had taken, believing he had thereby purchased the ill-gotten tickets and that plaintiff would tell the Commission the winning ticket was sold and not stolen.

Although she accepted the $40 and placed it in a bag along with the other proceeds from the sale of lottery tickets, it was not plaintiff's intention to sell the tickets to the minor. In fact, later that same day, plaintiff advised the Commission of the theft.[1]

The Commission immediately listed the tickets as stolen, and no payment was made to the minor's mother. Thereafter, the minor's mother executed a statement relinquishing all rights to the ticket, "feeling that it rightfully belongs to . . . [plaintiff]." Plaintiff then submitted a claim for the $100,000 prize. After the Commission advised her that no payment would be made, plaintiff filed a complaint against the State of California to collect the proceeds from the winning lottery ticket.[2]

The matter proceeded to court trial, and judgment was awarded in favor of defendant State of California. The trial court issued a written decision finding that plaintiff was not entitled to the prize money because she had not played the winning ticket consistent with the principle of fair chance. For the reasons expressed in this opinion, we agree and shall affirm the judgment.

---

[1] Plaintiff testified she did not know the amount of the prize as of the time she reported the ticket stolen. She could not recall when she first acquired this information but believed she was aware of it by the time she met with the minor and his mother to discuss this theft. This meeting took place shortly after the minor had made his confession.

[2] Before filing this complaint, plaintiff submitted a claim for damages to the State Board of Control. Receiving no response, plaintiff elected to deem this claim denied by operation of law.

## Discussion

### I

California voters at the November 1984 general election approved Proposition 37, an initiative measure known as the California State Lottery Act of 1984. Proposition 37 amended the California Constitution to authorize the establishment of a state lottery (Cal. Const., art. IV, § 19, subd. (d)) and added provisions to the Government Code (§ 8880, et seq.; all subsequent statutory references are to the Government Code unless otherwise indicated) which created the Commission and empowered it to operate the lottery. (*City of Gilroy* v. *State Bd. of Equalization* (1989) 212 Cal.App.3d 589, 594 [260 Cal.Rptr. 723].)

Section 8880.47 authorizes the Commission to enter into contracts with retailers to sell lottery tickets to the public. Pursuant to contract provisions, title to the lottery tickets passes to the retailers upon acceptance of delivery, and the tickets are deemed purchased by the retailers. If any tickets remain unsold at the conclusion of the instant game, the retailer may either return the tickets to the Commission for credit or play them. Retailers are warned to treat lottery tickets like cash and are responsible for losses resulting from lost, stolen or mutilated tickets which they must immediately report to the Commission. No prizes may be paid on lottery tickets which have been stolen. (§ 8880.32, subd. (b).) However, in the event lost or stolen tickets are subsequently recovered, retailers must notify the Commission "so that [it] may make [the] tickets valid for prize payments."

During trial, an investigator employed by the Commission testified that, upon sufficient proof of ownership by the purchaser, prizes are paid for tickets which are stolen after retail sale, regardless of whether the coating was scratched off the tickets prior to their recovery. However, at the time the tickets in question were stolen from plaintiff's inventory, there were no rules or contractual provisions which expressly provided for the situation we face here where the tickets were stolen *prior to retail sale* and were scratched off before they were recovered. The Commission has since amended the standard retailer contract terms and conditions to provide for this eventuality. Section 206, subdivision (D) states, "Any Instant Game ticket which is stolen prior to its retail sale and is scratched off prior to its recovery is automatically void." Another amendment concurrently made to this section provides that if stolen tickets are recovered before their coating has been scratched off, they may be sold by the retailer upon inspection and approval by the Commission.

## II

Plaintiff contends she is the owner of the winning ticket, having purchased it from the Commission by the terms of her retailer contract, and thus has the same entitlement to the prize proceeds as a person would if the ticket had been purchased from a lottery retailer. She asserts that there is nothing in her retailer contract which would prohibit this result. Rather, she argues, before the Commission amended the standard contract terms, tickets which were stolen and subsequently recovered were treated as valid, requiring the retailer to notify the Commission in order to make the tickets available for payment. She contends that the Commission's failure to provide for the situation which has occurred in this case must be construed against the Commission as the drafter of the contract. In her view, the Commission's subsequent amendment to the standard contract provisions to declare such tickets void closed a "loophole" which previously treated as valid all tickets which were stolen and subsequently recovered, regardless of whether the theft occurred before or after retail sale or whether the tickets were recovered before or after they had been scratched off. We are unpersuaded.

The sine qua non entitling one to the proceeds of a winning lottery ticket is that the ticket was played in a manner consistent with fair chance. An understanding, agreement or expectation that the distribution will be determined by chance is an essential element to the game of lottery. (*Finster v. Keller* (1971) 18 Cal.App.3d 836, 843 [96 Cal.Rptr. 241]; see also Pen. Code, § 319.) When this element of chance is absent, the game's character as a lottery ceases to exist. (*People v. Carpenter* (1956) 141 Cal.App.2d 884, 888 [297 P.2d 498]; 71 Ops.Cal.Atty.Gen. 139, 146 (1988).)

This requirement is reflected in the rules adopted by the Commission for instant games. While plaintiff, as a retailer, was permitted to play lottery tickets in her inventory, section 13 of the rules and regulations of Instant Game 7 specifically provided, "Retailers are prohibited from playing the tickets using any method other than fair chance or any method that is contrary to the principle that every ticket has an equal and random chance of winning." These rules and regulations were incorporated by reference in the retailers contract plaintiff signed in which she agreed to comply with these rules. Furthermore, section 209 of the standard contract terms, also incorporated by reference in plaintiff's contract, prohibited retailers from conducting ". . . the sale of Lottery tickets in a manner that will in any way be contrary to the principle that every ticket sold has an equal and random chance of winning the prize for the game."

Despite the fact that the ticket had been scratched off and was an obvious winner, plaintiff argues she did play it consistent with the principle of fair

chance. ■ ■■ ■■ ■ She bases this contention on the theory that, having no other alternative, she constructively played the stolen tickets because she could not return them to the Commission for a credit or sell them to the public.[3] ■■ According to plaintiff, ". . . it does not follow that [the tickets were not thereby played] under the principle of fair chance where every ticket has an equal and random chance of being a winner or a loser. The odds don't change because one has no choice but to play the tickets." Plaintiff contends, therefore, there is no distinction between her situation where the tickets were stolen from her inventory and scratched off by the thief and the situation where tickets purchased from a retailer are subsequently stolen, scratched off by the thief and recovered.

We disagree. Retailers purchase lottery tickets from the Commission at a 5 percent discount. They may either sell the tickets to the public for a profit or play the tickets in their inventory. If any tickets remain unsold at the conclusion of a particular instant game, the retailer may either return the tickets to the Commission for a credit or play them. Since retailers already have title to the lottery tickets in their inventory, they must take an additional step to put them into play. This action must be consistent with the principle of fair chance—in ignorance of what lies beneath, "zillions or zilch" (as put by the trial court). It is not until the retailer takes this step that he or she has the same random chance of winning as everyone else who takes a chance by purchasing a ticket without the benefit of an advance tip-off that a particular ticket is a winner. This is the chance the ultimate purchaser takes in buying a ticket from a lottery retailer. The distinction between the two situations is not based on classes of ownership but rather the point at which the element of fair chance enters the picture.

Here, fate intervened, and the tickets were scratched before plaintiff had the opportunity to put them into play.[4] Thus, plaintiff attempted to "play" the ticket knowing she had a 100 percent chance of winning. As correctly

---

[3] At the time of this incident, the Commission did not compensate retailers for lost or stolen tickets. Plaintiff contends this constitutes a due process violation, i.e., taking without just compensation. We disagree. There is no taking by the state when retailers lose lottery tickets or they are stolen from them, nor is there any constitutional provision which compels the state to act as an insurer, indemnifying retailers for such losses.

Section 209 has since been amended to provide that the Commission will pay retailers 75 percent of the amount they paid for tickets which were stolen from their inventory.

[4] We are aware that plaintiff testified her invariable practice was to play all unsold tickets which remained at the conclusion of an instant game. However, these tickets were stolen before that could occur. Moreover, there is no evidence indicating that, in the absence of the theft, the tickets would have remained unsold. Plaintiff has not demonstrated that Instant Game 7 was close to completion. Since these tickets were taken from an opened packet, they apparently were next in line to replenish the cache at the cash register and thus could have been sold prior to the end of the game.

noted by the trial court, "The circumstances under which plaintiff learned that the ticket here had great value simply did not amount to a fair, equal and random chance taken by her." Since she did not play the winning ticket consistent with the principle of fair chance, plaintiff was not entitled to the prize money.

■ Finally, we agree with the trial court that the Commission's amendment to section 206 of the standard retailer contract provisions represents a clarification, rather than a change as contended by plaintiff, of the status of stolen lottery tickets. ■ "Although generally it is presumed that an amendment . . . indicates an intent to substantially change the statute [citations], surrounding circumstances may show that the change was prompted by a legislative desire to clarify [statutory intent]. [Citations.] Subsequent legislation clarifying a statute does not change its meaning but merely supplies an indication of legislative purpose which may be considered together with other factors in arriving at the true intent existing at the time the statute was enacted. (Citations.)" (*In re Marriage of Paddock* (1971) 18 Cal.App.3d 355, 360 [95 Cal.Rptr. 652].)

■ It is readily apparent that the amendment to section 206 constitutes a clarification of then-existing statutory purpose. Prior to the amendment, stolen tickets which were recovered by the retailer were considered valid, the retailer being required to notify the Commission of their recovery so the tickets could be made available for payment of any prize proceeds. This remains unchanged by the amendment; the only requirement added is inspection and approval by the Commission prior to sale. Before and after this amendment, section 209 of the contract terms has prohibited retailers from selling lottery tickets in any manner inconsistent with the principle of fair chance. The amendment, voiding tickets which were stolen prior to retail sale and scratched off before their recovery, merely clarifies the fact that such tickets could not thereafter be sold since their character—as winners or losers—would be immediately apparent. Such tickets could not possibly be played with a random chance of winning.

As aptly stated by the trial court, "there was no contemplation by either party [or the Legislature] that [plaintiff] would be entitled to step into the place of a thief and to collect a prize even though she had not submitted her chances, in the blind, to the fickle randomizing of Lady Luck."

## DISPOSITION

The judgment is affirmed.

Puglia, P. J., and Carr, J., concurred.

A petition for a rehearing was denied June 28, 1990, and appellant's petition for review by the Supreme Court was denied August 22, 1990.