Michael DACY, Diane Dacy, Scott M. Anshutz, Julie A. Anshutz, and Dacshutz, Inc., d/b/a Mr. "G's", Petitioners,

v.

The Honorable Max A. GORS, Circuit Court Judge, Sixth Judicial Circuit, Respondent.

Michael DACY, Diane Dacy, Scott M. Anshutz, Julie A. Anshutz, and Dacshutz, Inc., d/b/a Mr. "G's", Plaintiffs and Movants,

v.

Ionia KLEIN, Defendant and Respondent.

Nos. 17505, 17508.

Supreme Court of South Dakota.

Argued May 2, 1991.

Decided June 5, 1991.

Rick Johnson of Johnson, Eklund & Abourezk Gregory, for petitioners, plaintiffs and movants; Wally Eklund and Michael Abourezk of Johnson, Eklund & Abourezk, Gregory, on brief.

Mark Smith, Asst. Atty. Gen., Pierre, for defendant and respondent; Mark Barnett, Atty. Gen., Pierre, on brief.

Lawrence L. Piersol of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for Ionia Klein; Edward J. Leahy and Timothy M. Gebhart of Davenport, Evans, Hurwitz & Smith, Sioux Falls, on brief.

MILLER, Chief Justice.

This is an original mandamus proceeding commenced seeking to require a circuit judge to grant an application for a preliminary injunction and to require that certain disputed lottery proceeds be deposited with his court pending final determination of the litigation below. This court issued an alternative writ of mandamus requiring the circuit judge to enter an order temporarily requiring the deposit of funds into court to be placed in interest-bearing accounts and further directed him to show cause why the writ should not remain in effect until the litigation below is completed on its merits. This court has now received extensive briefs and heard the argument of the litigants at the hearing on the alternative writ. For reasons set forth below, the alternative writ will be quashed and the order maintaining the status quo vacated.

## FACTS

"Mr. G's" is a convenience store in Gregory, South Dakota, operated by Dacshutz, Inc., a South Dakota corporation. The owners of Dacshutz, Inc. are Michael and Diane Dacy, and Scott M. and Julie A. Anshutz. Dacshutz, Inc. entered into an extensive agreement with the South Dakota Lottery to sell Lotto America tickets. The specific provisions of the agreement are not particularly relevant in these proceedings.

On Thursday, April 4, 1991, an employee of "Mr. G's" printed a Lotto America ticket for a customer who then refused to pay for it because it was not the specific type of ticket he wanted. (This was a $5.00 ticket eligible for the Lotto America drawings on April 6, 10, 13, 17, and 20, 1991. Apparently the customer wanted five $1.00 tickets for the April 6 drawing.) The employee then placed the ticket on the lottery ticket terminal in hopes of selling it to another customer.[1]

A Lotto America drawing was held on April 6, 1991. The next day at approximately 8:30 a.m., Ionia Klein, an employee of "Mr. G's," noticed the lotto ticket lying on top of the Lotto America ticket terminal. Upon examination of the lotto ticket, she noticed that the numbers corresponded with the winning numbers randomly selected at the Lotto America drawing the previous evening. She also noticed that the lotto ticket had not been signed. Klein then claims to have purchased the lotto ticket by taking $5.00 from her purse and placing it in a separate cash box maintained by Dacshutz, Inc. for money paid for the purchase of Lotto America tickets. Klein then signed the lotto ticket with her name on the line provided on the back of the ticket.

On Monday, April 8, 1991, Klein presented the ticket to the South Dakota Lottery, which then proceeded to determine if the ticket was valid and if Klein was entitled to receive the proceeds. On April 9, 1991, upon completion of the investigation by the South Dakota Lottery, its Executive Director, Susan Walker, officially determined that Klein was entitled to the prize money of $12.4 million to be paid in twenty annual installments.

On Wednesday, April 10, "negotiations" over the proceeds of the lottery ticket began between the owners of "Mr. G's" and Klein. Included in these discussions were accusations of theft of the lottery ticket by Klein. There were also efforts to reach a settlement agreement. Klein ultimately refused the settlement.

On April 11, 1991, Dacys, Anshutz', and Dacshutz, Inc. commenced an action in circuit court against Klein, asserting that they were the owners of the lottery ticket. The complaint sought declaratory relief of their ownership rights and damages for Klein's alleged fraud and conversion. These owners of "Mr. G's" also sought an injunction requiring that the first year's proceeds of nearly $630,000 of the lottery winnings be deposited into court pending a determination of the true ownership of the

---

1. The Retailer Manual issued by the South Dakota Lottery Commission states:
   "Lotto tickets refused by a customer, for any reason, or printed in error, should be sold to another customer. There are many cases in other lotteries of such tickets becoming *winning* tickets."
   (Emphasis in original.)

ticket. After a four-hour evidentiary hearing, Circuit Judge Gors denied the request for a temporary injunction. He later entered extensive written findings of fact and conclusions of law. Among other things, Judge Gors concluded that plaintiffs had not shown irreparable harm or a reasonable probability of success on the merits.

Upon appropriate application, this court entered an order preserving the status quo in the circuit court action and exercised original jurisdiction by issuing the alternative writ of mandamus referred to earlier, and which we now quash.

## DECISION

Before proceeding further with this opinion, some preliminary comments are appropriate. This case has fostered much media attention and various correspondence to members of this court from private citizens taking varied positions. It seems clear to us that there is a vast misunderstanding of the precise legal issue presented before this court at this time.

■ WE ARE NOT DECIDING WHO OWNS THE LOTTERY TICKET OR WHO GETS THE LOTTERY PRIZE!! That will be decided later at the trial court level. THE SOLE ISSUE BEFORE THIS COURT IS WHETHER CIRCUIT JUDGE GORS SHOULD BE MANDATED TO ISSUE A TEMPORARY INJUNCTION TO REQUIRE THE DEPOSIT OF THE FIRST YEAR'S LOTTERY WINNING PROCEEDS DURING THE PENDENCY OF THE LITIGATION. We hold that we cannot and should not order Judge Gors to do so.

Under Article V, § 5 of the South Dakota Constitution, this court has authority to issue, hear and determine any original or remedial writs. By rule of this court, codified at SDCL 15–25–1, the exercise of such original jurisdiction "is reserved for the consideration of matters of prerogative, extraordinary, and general concern."

SDCL 21–29–1 provides:

The writ of mandamus may be issued by the Supreme and Circuit Courts, to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station; or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled, and from which he is lawfully precluded by such inferior tribunal, corporation, board, or person.

Further, it "must be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law." SDCL 21–29–2.

■ "The purpose of mandamus is to compel affirmative action[.]" *State ex rel. Caldwell v. Skinner*, 59 S.D. 68, 72, 238 N.W. 149, 151 (1931). "[M]andamus [is an] extraordinary remed[y] and apt for use by this court in proper cases in the exercise of its general superintending control over inferior courts and for the purpose of preventing injustice by acts of such courts[.]" *State v. Knight*, 52 S.D. 572, 581, 219 N.W. 258, 261 (1928). *See also Marbury v. Madison*, 1 Cranch 137, 2 L.Ed. 60 (1803).

■ For a party to prevail and "be granted a writ of mandamus ' "... he must have a clear legal right to have a service performed by the party to whom he seeks to have the writ directed." ' " *S.D. Trucking Ass'n v. S.D. Dept. of Transp.*, 305 N.W.2d 682, 684 (S.D.1981) (quoting *Bandy v. Mickelson*, 73 S.D. 485, 488, 44 N.W.2d 341, 342 (1950) (quoting from *Bailey v. Lawrence County*, 2 S.D. 533, 537, 51 N.W. 331, 332 (1892). "If the service or action which one seeks to compel is discretionary the proper exercise of such discretion will not be interfered with. This is not to say there is no checks on such discretion." *S.D. Trucking Ass'n*, at 684.

"... The discretion must be exercised under the established rules of law, and it may be said to be abused within the foregoing rule where the action complained of has been arbitrary or capricious, or based on personal, selfish, or fraudulent motives, or on false information, or on a total lack of authority to act, or where it amounts to an evasion of a positive duty, or there has been a refusal to consider pertinent evidence, hear the

parties when so required, or to entertain any proper question concerning the exercise of the discretion, or where the exercise of the discretion is in a manner entirely futile and known by the officer to be so and there are other methods which if adopted would be effective."

*Id.*, at 684 (quoting *State v. Richards*, 61 S.D. 28, 38–39, 245 N.W. 901, 905 (1932).

■ As noted previously, petitioners requested Judge Gors to issue a preliminary injunction. Pursuant thereto, a hearing was held on April 19, 1991. At the hearing, there was testimony from five witnesses. The transcript of the hearing contains 119 pages. At the conclusion of the hearing, Judge Gors denied petitioners' request for a preliminary injunction. Certainly, the issuance or denial of an injunction is discretionary with a trial court. *Losee v. Hettich*, 74 S.D. 461, 54 N.W.2d 353 (1952).

"Whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113 (8th Cir.1981) (en banc). *See also Gross v. Connecticut Mut. Life Ins. Co.*, 361 N.W.2d 259 (S.D.1985); *Olson v. Cass*, 349 N.W.2d 435 (S.D.1984).

It is obvious from reading Judge Gors' findings of fact and conclusions of law that he considered each and every one of the foregoing criteria and factors.[2] He made specific findings and conclusions as they relate to the same.[3] Quite appropriately, in that preliminary injunction proceeding, he

made no judicial determination of the ownership of the lottery ticket. That must be done at the trial on the merits. Also, we cannot, at this juncture, make a final determination of ownership of the lottery ticket. Typically in mandamus proceedings, courts do not consider questions as to the ownership of property. *Gregory v. Blanchard*, 98 Cal. 311, 33 Pac. 199 (1893); *State v. Cruise*, 111 Neb. 114, 196 N.W. 116 (1923); *Gilliam v. Harris*, 203 Va. 316, 124 S.E.2d 188 (1962); *May v. Whitlow*, 201 Va. 533, 111 S.E.2d 804 (1960); 55 C.J.S. *Mandamus* § 57 (1948). Any ultimate determination of ownership by this court may only be made on direct appeal following the trial court's final judgment.

The dissents principally assert that Klein will not prevail on the merits. Those assertions are premature at best. The trial court has entered findings of fact which we cannot say are clearly erroneous. The principle assertions of petitioners sound in fraud and deceit, which raise questions of fact to be resolved by a jury. *McKinney v. Pioneer Life Ins. Co.*, 465 N.W.2d 192 (S.D.1991); *Laber v. Koch*, 383 N.W.2d 490 (S.D.1986); *Commercial Credit Equipment Corp. v. Johnson*, 87 S.D. 411, 209 N.W.2d 548 (1973). Further, since we believe questions of fact remain: "It [is] necessary, therefore, that the rights of the parties should be determined by a judgment of the court in an ordinary action, and not in the first instance by mandamus." *Stanley County v. Jackson County*, 36 S.D. 350, 154 N.W. 806 (1915); *Custer County Bank v. Custer County*, 18 S.D. 274, 278, 100 N.W. 424, 425 (1904); *Bailey, supra.* "We are of the opinion that the ends of justice will be better [served] by having this cause ... first tried in the

---

**2.** He specifically concluded that plaintiffs have not shown: (1) a reasonable probability of success on the merits, (2) that Klein threatens or is about to remove or dispose of her property with intent to defraud creditors because plaintiffs are not her creditors, but rather persons seeking money damages in a tort action, (3) that irreparable harm will result to them if the preliminary injunction is not granted and that they do have an adequate remedy at law. The conclusions also hold that when balancing the equities and harm between the parties, the hardship to Klein would far outweigh potential harm to

plaintiffs and that the public interest weighs against issuance of the injunctive relief because Klein has been determined by South Dakota Lottery to be entitled to the lottery ticket proceeds.

**3.** Additionally the trial court found that Klein was not prohibited by Dacshutz, Inc. from purchasing Lotto America tickets and that SDCL 42–7A–33 authorizes her to purchase them. Judge Gors found that there are viable jury issues as to the ownership and sale of the ticket.

circuit court[.]" *Oss v. State Depositors' Guaranty Fund Commission,* 48 S.D. 258, 259, 204 N.W. 21, 21 (1925). Finally, whether we agree with Judge Gors' findings and conclusions is immaterial. The crucial question, as stated earlier, is whether he abused his discretion under the facts of the case. *Losee, supra.*

"The term 'abuse of discretion' refers to a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence." *Gross v. Gross,* 355 N.W.2d 4, 7 (S.D.1984); *Rykhus v. Rykhus,* 319 N.W.2d 167 (S.D.1982); *Herndon v. Herndon,* 305 N.W.2d 917 (S.D.1981); *Davis v. Kressly,* 78 S.D. 637, 107 N.W.2d 5 (1961); *Root v. Bingham,* 26 S.D. 118, 128 N.W. 132 (1910). Specifically, when "reviewing matters involving *judicial discretion* [the test] is 'whether we believe a judicial mind, in view of the law and the circumstances, could reasonably have reached that conclusion.'" *Myron v. Coil,* 82 S.D. 180, 185, 143 N.W.2d 738, 740 (1966) (emphasis added); *Slagle & Co. v. Bushnell,* 70 S.D. 250, 16 N.W.2d 914 (1944).

We believe that Judge Gors, in light of the evidence before him, did not abuse his discretion. Since the granting or denial of a preliminary injunction rests within the sound discretion of the trial court, *Losee, supra,* and we find no abuse of that discretion, mandamus will not issue. *S.D. Trucking Assn, supra.* Therefore, the Alternative Writ of Mandamus is hereby quashed.[4]

HENDERSON and AMUNDSON, JJ., concur.

WUEST and SABERS, JJ., dissent.

WUEST, Justice (dissenting).

I agree with the special writing of Justice Sabers and with the law cited in the majority opinion. Where I part company with the majority opinion is the application of the law to the facts of this case. There is no doubt the trial court has discretion to grant or deny injunctive relief, particularly where the facts are in dispute. Here, however, the relevant facts are not in dispute and the claim of Ionia Klein to the prize money is precarious at best. Whether she is entitled to the money is a question of law and not a question of fact.

An essential element of the game of lottery is chance. When the element of chance is absent, "the game's character as a lottery ceases to exist." *Horan v. State of Calif.,* 220 Cal.App.3d 1503, 1508, 270 Cal.Rptr. 194, 196 (1990). The undisputed facts before the trial court show Ms. Klein ventured no chance with respect to the April 6th Lotto America drawing; she acquired the winning ticket after the drawing and with the knowledge that it was the winning ticket. Therefore, as to Ms. Klein, there was no lottery.

The majority opinion correctly states we are not determining ownership of the ticket in this proceeding. But we are considering the probability of Mr. G's success in a trial on the merits. The facts before the trial court tend to show that Mr. G's was the owner of the ticket at the relevant time. Under its agreement with the South Dakota Lottery, Mr. G's was liable for all tickets issued at the store, whether sold or not. And, at the time of the drawing, the winning ticket had not been sold and Mr. G's was liable for it. Thus, there exists a strong probability that Mr. G's will ultimately prevail at trial.

Moreover, given the financial status of Ms. Klein, Mr. G's faces irreparable harm in that she will likely be judgment proof after a trial on the merits, at least to the extent her legal counsel is compensated from the first disbursement of the lottery proceeds. Indeed, it is in the public interest to insure that all who take a chance in the lottery, take an equal chance.

Quoting *S.D. Trucking Ass'n,* 305 N.W.2d at 684, the majority opinion ac-

---

**4.** "We deem it important to emphasize ... in this highly publicized dispute that we are reviewing the [refusal to] grant[ ] a *preliminary injunction,* not making a final decision on the merits." *Los Angeles Memorial Coliseum Commission v. National Football League,* 634 F.2d 1197, 1200 (9th Cir.1980) (emphasis in original).

knowledges that the trial court does not exercise unfettered discretion in granting or denying injunctive relief: "The [trial court's] discretion must be exercised under the established rules of law, and it may be said to be abused ... where it amounts to an evasion of a positive duty[.]" Under the circumstances of this case, I believe the trial court had a positive duty to maintain the status quo pending a determination of the ownership of the ticket. The trial court's refusal to issue the preliminary injunction amounts to an evasion of this duty and is an abuse of discretion.

I know my position is controversial and may be unpopular, but judges have to bite the bullet and decide cases according to the evidence and law as they see it, disregarding the popularity polls.[1] If the plaintiffs ultimately prevail in the ownership case and decided to play hardball, all kinds of lawsuits may be spawned by our failure to freeze these funds until title is finally determined. Couldn't the funds be traced and retrieved from the people who take the money from Ms. Klein? *See McFarland v. McFarland,* 470 N.W.2d 849 (S.D.1991). Can the South Dakota Lottery Commission be sued successfully, or otherwise? Why open Pandora's box any further?

I would issue the writ of mandamus.

---

**1.** In no way am I suggesting Judge Gors or my colleagues have done otherwise, as they are honorable men of high integrity. I know they have done the right thing as they see it.

**1.** Further harm from additional lawsuits could result from releasing these funds. Robin Parsons, the clerk from whom the ticket was ordered, has already started a lawsuit claiming ownership. The presently unknown person who is said to have "refused" the ticket, among others, could also jump into the fray.

Under the majority opinion in *McFarland v. McFarland,* No. 17043, slip op. (S.D. May 29, 1991) relating to "tracing of funds," the rightful owner of the ticket could bring more lawsuits to trace and recover these presently frozen funds against Klein's lawyers, bankers and any other paid creditors. If we permit the funds to be released to Klein, it could produce a trial lawyers' "Valhalla."

In view of the rare opportunity this Court has to prevent this kind of wasteful litigation, a decision to permit the release of the funds to Klein will rank high on the historical list of legal opportunities known and blown. Re-

---

**SABERS, Justice (dissenting).**

We should maintain the freeze on these funds to preserve them for the rightful owner, prevent harm and avoid multiple lawsuits.[1]

A basic premise of the law is that a person cannot profit from her own wrong. The law also prevents an employee from taking advantage of her employer.[2] Ionia Klein knew she was taking advantage of her position as an employee and she knew she was doing wrong because she *lied* about the time and circumstances of the claimed purchase. This is not based on employer's version, but hers. She cannot claim a more favorable version of the facts than her own testimony.[3]

Klein neither participated in nor won the lottery drawing because she knew the ticket was a winner before she took possession of it. Since she took no risk in acquiring the ticket, as to her, there was no lottery.[4] Because the ticket was issued but not sold at 8:00 p.m. on April 6, 1991, the employer's account was responsible to pay for it at the time of the drawing and the employer became the winner of the lottery.

Since it is clear that *Klein* is not the owner, irreparable harm will occur to the owner if the first installment of $500,000 is released to her. Therefore, the owner is entitled to maintain the status quo,[5] and,

---

leasing these funds solves no problems, only creates more problems.

**2.** *Brown County v. Zerr,* 67 S.D. 516, 295 N.W. 289, 291–292 (1940); *Lucey v. Vilhauer,* 64 S.D. 54, 264 N.W. 203, 206–207 (1935) *overruled on other grounds, Morrell Livestock Co. v. Stockman's Comm'n Co.,* 77 S.D. 114, 86 N.W.2d 533, 536 (1957); Restatement (Second) of Agency §§ 389, 390 (1958).

**3.** *Miller v. Stevens,* 63 S.D. 10, 256 N.W. 152, 155 (1934).

**4.** *Horan v. State,* 220 Cal.App.3d 1503, 270 Cal. Rptr. 194, 196 (1990).

**5.** SDCL 15–6–62(f). **POWER OF SUPREME COURT NOT LIMITED.**

The provisions in § 15–6–62 do not limit any power of the Supreme Court to stay proceedings during the pendency of an appeal or to suspend, modify, restore, or grant an injunction during the pendency of an appeal or to make any order appropriate to preserve the

there being no adequate remedy at law,[6] injunctive relief is appropriate. To hand the check over to Klein under these circumstances, although it may be more popular, would constitute a clear abuse of discretion.[7] One cannot mask this abuse of discretion by failing to make the obvious findings and legal conclusions.

Despite this, to avoid claimed temporary hardship to Ionia Klein and her husband, who terminated their employment upon "winning" the lottery, I would vote to let Klein obtain a monthly amount of $1,000 from these lottery funds during the pendency of the action. Any amounts obtained would be subject to repayment when ownership is conclusively determined.

status quo or the effectiveness of the judgment subsequently to be entered.

6. An inadequate remedy at law is a prerequisite to injunctive relief. *Gross v. Conn. Mut. Life Ins. Co.*, 361 N.W.2d 259, 265 (S.D.1985). Even when a potential injury is reducible to a money judgment, the remedy may be inadequate at law if the judgment would be uncollectible. *Tri-State Generation v. Shoshone River Power, Inc.*, 805 F.2d 351, 355 (10th Cir.1986); *Central States v. Admiral Merchants Motor Freight, Inc.*, 511 F.Supp. 38, 43 (D.Minn.1980), *aff'd,* 642 F.2d 1122 (8th Cir.1981); *Michael–Curry v. Knutson*

*Shareholders,* 423 N.W.2d 407, 409–410 (Minn. App.1988). *See also* 42 Am.Jur.2d *Injunctions* § 49 (1969) ("[A]n injury is irreparable ... where, from the ... financial condition of the person committing it, it cannot be readily, adequately, and completely compensated [ ] with money").

7. *Schmalz v. Scully,* 49 S.D. 424, 207 N.W. 221, 222 (1926) ("While the question of continuing an injunctional order during the pendency of this action is addressed to the discretion of the trial court, such discretion is a legal discretion and not an arbitrary one").