Filed 5/5/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RYAN ANDERSON,<br><br>    Defendant and Appellant. | A169966<br><br>(Contra Costa County Super. Ct. Nos. 04-20-32811, 04-22-01154) |

Ryan Anderson pled guilty to several counts—including second degree robbery, grand theft, retail theft, and second degree burglary—in connection with a scheme in which he stole "Scratchers" lottery tickets from multiple retailers and redeemed winning tickets for prize money. He appeals from the trial court's order that he pay $179,231.65 in restitution to the California State Lottery (Lottery).

Anderson's appointed appellate counsel filed a brief identifying no specific issues for appeal and requesting our independent review of the record under *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*). Anderson elected not to file a supplemental brief raising issues for appeal. Based on our independent review of the record, we invited the parties to file supplemental briefs on whether the trial court abused its discretion in calculating the restitution award—specifically, whether the court should have subtracted the amount of cash prizes Anderson collected from the retail value of the tickets that he stole. Having considered the parties' briefs, we affirm.

1

## BACKGROUND

### A.

Under the California State Lottery Act of 1984 (Lottery Act; Gov. Code, § 8880 et seq. )[1], the purpose of the Lottery is to provide additional funds to benefit the public education system without increasing taxes. (§ 8880.1.) The Lottery uses no state funds. (§ 8880.3; *Western Telcon, Inc. v. California State Lottery* (1996) 13 Cal.4th 475, 483 (*W. Telcon*).) All its revenues are allocated "to maximize the amount of funding" to schools. (§ 8880.4.) After the Lottery pays its operating expenses and winning prizes, the remainder of its revenue—including unclaimed prize money—goes to schools. (§§ 8880.4, subds. (a)(1)-(3), (a)(5), 8880.64, subd. (b)(1), 8880.63, subd. (a), 8880.65; *W. Telcon*, at p. 483).

Prior to selling tickets to the public, retailers must first purchase the tickets from the Lottery. (*See Horan v. State of California* (1990) 220 Cal.App.3d 1503, 1509.) The Lottery has discretion to reimburse retailers for stolen tickets. (Lottery Regs., § 7.5.8 (June 29, 2023) <https://static.www.calottery.com/-/media/Project/calottery/PWS/PDFs/About-Us-Docs/Approved-Regulations-6-29-23-1.pdf> [as of May 5, 2025].)

### B.

Anderson led a retail crime group that stole thousands of tickets for "Scratchers" games (*see* Lottery Regs., §§ 1.0, 3.10.2 (June 29, 2023)) from authorized retailers. One member of the group would distract the store clerk while another would steal dozens of unsold tickets. They would then immediately drive to a different retailer to redeem winning tickets before the theft could be reported and the tickets invalidated.

---

[1] Undesignated statutory references are to the Government Code.

## C.

At the restitution hearing, the prosecution presented a chart detailing the value of the lottery tickets that Anderson stole from retailers, the amounts paid by the Lottery to reimburse the retailers for their losses, and the amounts of the prizes that the Lottery paid to Anderson when he illegally redeemed stolen tickets. Cynthia Macias, a manager in the Lottery's financial division, prepared the chart and testified as to its contents. Macias explained that, for the majority of affected retailers, the Lottery reimbursed the retailer for 100 percent of the stolen ticket value, resulting in a $116,243 loss born by the Lottery. The Lottery reimbursed the retailers by giving them credits for tickets in other Lottery games. Anderson does not dispute that the tickets he stole could not be resold. (*See* Lottery Regs., § 5.5.6 (June 29, 2023) ["Tickets stolen from the Lottery or from Lottery Retailers are void and ineligible for Prizes."].)

The prosecution sought restitution to the Lottery for $116,243 in ticket revenue that it lost, $62,365 in prize money that it paid to Anderson when he redeemed stolen tickets, and $623.65 in commissions that it paid to retailers based on wrongfully redeemed tickets, for a total restitution request of $179,231.65.

Anderson did not dispute that the Lottery was entitled to recoup the $62,365 in prize money he received or the $623.65 for retailer commissions. But, among other arguments, he contended that the prize money should have been deducted from the retail value of the stolen tickets.

The trial court rejected the argument and found that the stolen tickets represented lost sales revenue. It ordered him to pay $179,231.65 in restitution.

## DISCUSSION

Anderson contends that the trial court improperly calculated the restitution. We disagree.

When a crime victim has suffered an economic loss because of the defendant's conduct, the trial court must order full restitution to the victim. (Pen. Code, § 1202.4, subds. (f), (f)(3).) Courts broadly construe the right to restitution. (*People v. Ung* (2023) 88 Cal.App.5th 997, 1001.) We review a restitution order for abuse of discretion, and we must uphold the amount of restitution if there is a factual and rational basis for it. (*Ibid.*)

Anderson asserts that the restitution for the stolen tickets should be the *net* value of those tickets—that is, the retail value of the stolen tickets, $116,243, minus the cash prizes associated with those tickets, $62,365. Otherwise, he says, the Lottery would receive a windfall because, in the absence of any theft, it would ordinarily have paid the prizes from the ticket revenue. (*See People v. Chappelone* (2010) 183 Cal.App.4th 1159, 1172-1174 [restitution order granted retailer improper windfall by valuing stolen merchandise at full market value despite the fact that it had been damaged, and worth far less, when stolen].)

There is no windfall here. We will take it in steps.

First, there is no dispute about how much the retailers lost: $116,243. That is the amount that they paid the Lottery for the tickets. When Anderson stole the tickets, the retailers lost that entire amount because they no longer had the tickets to sell. Had the Lottery not reimbursed the retailers, Anderson surely could not dispute that he would have owed the retailers $116,243.

Second, that same loss was then shifted from the retailers to the Lottery when the Lottery reimbursed the retailers for the stolen tickets by crediting them with tickets for different Lottery games. Nothing about the reimbursement changes the amount of the loss.

4

Third, the Lottery will receive no windfall for unpaid prizes. It remained liable for the prizes associated with the new tickets credited to the retailers. (*See* § 8880.4, subd. (a)(1) [providing that not less than 50 percent of the Lottery's annual revenues "shall be returned to the public in the form of prizes"]; *see also* § 8880.63, subd. (a).) Anderson's restitution of $116,243 effectively restores to the Lottery the ticket revenue that it needed to pay the prizes but did not receive because, when the Lottery reimbursed the retailers for the stolen tickets, the retailers received new tickets on credit.

Again, Anderson (properly) does not dispute that he must also repay the Lottery for the cash prizes that he obtained by redeeming stolen tickets. Anderson, of course, has no legitimate claim to the prizes. (*Cf. People v. Hudson* (2003) 113 Cal.App.4th 924, 928 [defendant who defrauded welfare agency is entitled to restitution offset for amount to which she was *legitimately* entitled].) Stolen tickets are invalid and cannot be redeemed by anyone. (*See* Lottery Regs., § 5.5.6 (June 29, 2023) [providing that stolen tickets are void].) Revenue from invalid tickets and unclaimed prizes goes to schools. (§ 8880.4, subd. (a)(3); *see also* § 8880.65.)

Finally, we reject Anderson's argument that the evidence was insufficient to support the amount of restitution ordered by the trial court. The prosecution met its burden of establishing a prima facie case by presenting a detailed chart documenting the loss amounts along with supporting testimony from a Lottery employee. (*See People v. Lehman* (2016) 247 Cal.App.4th 795, 801, 803.) The burden then shifted to Anderson to prove that the claimed amounts were excessive. (*See id.* at p. 801.) The trial court's ruling that Anderson had failed to do so was not an abuse of discretion.

## DISPOSITION

The judgment is affirmed.

                                                    BURNS, J.

WE CONCUR:


JACKSON, P.J.
SIMONS, J.

*People v. Anderson (A169966)*

Superior Court of Contra Costa County, Nos. 042032811 and 042201154, The Hon. Rebecca C. Hardie, Judge

Donald L. Lipmanson, under appointment by the First District Appellate Project, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Catherine A. Rivlin, Supervising Deputy Attorney General, and Andrew Haney, Deputy Attorney General, for Plaintiff and Respondent.